## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DONNA ROADMAN,** | ) | **Case No. 3:16-cv-246** |
| | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SELECT SPECIALTY HOSPITAL and** | ) | |
| **RONALD LEWIS,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

### I.    Introduction

On November 18, 2016, Plaintiff Donna Roadman filed her Complaint (ECF No. 1) with the Court, alleging various statutory and common law claims relating to purported sexual discrimination by her employer and a fellow employee.

Defendants' Motion to Dismiss in Part (ECF. No. 7) is presently before the Court. Defendants' Motion asks the Court to dismiss the entirety of Count 2 and portions of the remainder of the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

### II.    Factual and Procedural Background

The following facts, which the Court accepts as true in deciding Defendants' Motion to Dismiss in Part, are alleged in the Complaint (ECF No. 1).

Defendant Select Specialty Hospital Johnstown, Inc. ("Select"), a specialty care hospital offering rehabilitative care and long term acute care, hired Plaintiff Donna Roadman ("Roadman") as a registered nurse on July 7, 2015. (*Id.* ¶¶ 5-8). During the second week of Roadman's employment, Roadman was introduced to Defendant Ronald Lewis ("Lewis"), a registered nurse who had worked for Select for several years prior to Roadman's employment. (*Id.* ¶ 10-11). Select assigned Lewis to train Roadman for her new position. (*Id.* ¶ 12).

Before beginning her training, a number of other employees made comments to Roadman concerning Lewis's behavior. (*Id.* ¶ 13). These comments included: (1) a nurse named Jamie telling Roadman to "be careful" around Lewis because "he hit on her," (2) Jamie suggesting "being mean" to Lewis so that he would not harass or continue to harass her, (3) another employee informing Roadman that Lewis liked her and wanted to date her, and (4) a third employee joking in front of Lewis and Roadman, therein "implying" knowledge of Lewis's intentions that Roadman would never go out with Lewis. (*Id.* ¶ 13).

Thereafter, the Complaint alleges that, with approval and knowledge of Select, Lewis created and maintained a hostile work environment for Roadman because of her gender by engaging in the following behavior: (1) demanding dates, intimating that Roadman should sleep with him, touching Roadman's buttocks, and touching Roadman's cheeks; (2) grabbing Roadman by the waist and grinding his crotch into her buttocks to the point where Roadman "felt Mr. Lewis's erect penis against her" on one occasion in the medicine room; (3) calling Roadman "babe" and "hun" and commenting on Roadman's appearance by stating Roadman was "cute," "pretty," or "sexy" on "diverse dates"; (4) texting Roadman on her cell phone number that he

acquired for purposes of orientation and calling Roadman "babe" or "hun" in those messages; and (5) "by other such actions too numerous to list in their entirety." (*Id.* ¶ 14).

Roadman reported this behavior to her scheduler, Renee Lightcap ("Lightcap") and requested to be trained by someone other than Lewis. (*Id.* ¶ 15). Lightcap complied, and a different person completed Roadman's remaining week of orientation. (*Id.* ¶ 16). After returning from vacation, Roadman's supervisor, Danielle Smorto ("Smorto"), telephoned Roadman and "asked her what happened." (*Id.* ¶ 17). Roadman reported the alleged harassment to Smorto and sent a follow-up e-mail. (*Id.* ¶¶18-19). Smorto told Roadman that she would investigate the situation, instructed Roadman to not discuss the matters with anyone, and changed the weekend work schedule so that Roadman and Lewis would not be working together. (*Id.* ¶¶ 20-23).

Approximately one week after speaking with Smorto regarding the alleged harassment, Smorto called Roadman into a meeting with Smorto and Matt Gost ("Gost"), a human resources employee. (*Id.* ¶ 24). At this meeting, Smorto and Gost told Roadman that they had "investigated her complaints with Mr. Lewis, exclusively" and that Lewis had denied her accusations. (*Id.* ¶¶ 25-26). Roadman then informed Smorto and Gost that she could not work with Lewis, requested that she not be scheduled with Lewis, and advised them that she had received inappropriate text messages from Lewis. (*Id.* ¶¶ 27-28). After this meeting, Roadman also discussed the matter with Barb Foster ("Foster")—whose position, if any, with Select is left to the reader's imagination by the Complaint—and stated that she did not want to work with Lewis. (*Id.* ¶ 29). Roadman provided copies of the above-referenced text messages to Foster and told her that Jamie Cotterman—presumably the same nurse who told Roadman to "be[] mean" to Lewis so he would not harass her—could corroborate her concerns. (*Id.* ¶¶ 30-31). The Complaint alleges that Select

was aware of Roadman's concerns regarding Lewis because, on several occasions, Roadman called off work when she was scheduled to work with Lewis and still received pay. (*Id.* ¶ 32).

Roadman had an additional meeting with Human Resources, during which she was informed of the effort to schedule her and Lewis for different shifts, but that Human Resources could not "guarantee" that she and Lewis would not be scheduled together. (*Id.* ¶¶ 33-34). At this second meeting, Human Resources "threatened the Plaintiff that if either her or Mr. Lewis said anything else or filed a complaint either one would be fired." (*Id.* ¶ 35). The Complaint alleges that this threat made it intolerable for Roadman to continue her employment because she believed that she was being "shunned into silence" and that she "could have been victimized later by Mr. Lewis or his friends." (*Id.* ¶ 36). The Complaint further alleges that Roadman was "forced to resign" on August 26, 2016.[1] (*Id.* ¶ 37).

Roadman filed a charge of discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue. (*Id.* ¶ 38). Roadman then filed her Complaint with the Court on November 18, 2016. Defendants filed their Motion to Dismiss Complaint in Part on February 7, 2017 (ECF No. 7), which became ripe for a decision upon the filing of Defendant's Reply to Plaintiff's Brief in Opposition to Motion to Dismiss Complaint in Part on May 19, 2017 (ECF No. 18).

## III.    Standard of Review

In determining the sufficiency of a complaint challenged under Rule 12(b)(6), a district court must conduct a two-part analysis. First, the court should separate the factual and legal

---

[1] As pointed out by Defendants (ECF No. 8, p.4), the year stated in the Complaint appears to be a typographical error and should read August 26, 2015.

elements of the claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, the court must determine whether the factual matters alleged are sufficient to establish that the plaintiff has a "plausible claim for relief." *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint, however, need not include "detailed factual allegations." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The court must also accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to the nonmoving party. *See id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). But, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, the complaint must present sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has stated a "plausible claim for relief" is a context-specific inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The record to consider in making this determination includes the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (emphasis and citation omitted).

## IV. Jurisdiction & Venue

The Court has jurisdiction over Roadman's federal claim under Title VII pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims pursuant to 28

U.S.C. § 1367. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the alleged events giving rise to Roadman's claims occurred in Johnstown, Cambria County, Pennsylvania. (ECF No. 1 ¶ 2).

## V. Analysis

Defendants have moved to dismiss portions of the Complaint on several grounds. The Court will address each of Defendants' grounds in turn.

### A. Dismissal of the Title VII Claim Against Lewis

First, Defendants contend that the Roadman's Title VII claim is not cognizable against Lewis. The Court agrees.

Individual employees cannot be held personally liable under Title VII. *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996) (en banc); *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001).

In the present case, the Complaint asserts a Title VII claim against both Lewis and Select.[2] However, the Complaint identifies Lewis as an individual registered nurse, employed by Select, who was assigned to train Roadman and provide orientation for Roadman. (ECF No. 1 ¶¶ 11-12).

---

[2] As noted by Defendants (ECF No. 8, p.7), the Complaint fails to specify against which Defendant(s) the Title VII claim is brought. Yet, the Complaint refers to "Defendants" in the plural (ECF No. 1, pp.6-7), suggesting that Roadman intended to assert the claim against both Select and Lewis. The Court also notes that, while the Complaint includes organizational headers naming the Defendant(s) subject to that count for Count 2 and Count 3, no such header was provided for the Title VII claim, which presumably was intended to be Count 1. Furthermore, rather than leaving statutory citations to the Court's imagination, the Court would ask Plaintiff's counsel to fill in all of the "blanks" before filing a document with the Court. *See* ECF No. 1, ¶1 ("Jurisdiction of this court is invoked under *[citation of statute]*."); ECF No. 1, ¶2 ("Venue is appropriate and proper in the Federal District Court for the Western District of Pennsylvania under *[citation of statute]* . . . .").

Therefore, to the extent it is asserted against Lewis, Roadman's Title VII claim is dismissed with prejudice because, as conceded by Roadman,[3] Title VII does not permit the imposition of personal liability against individual employees.

**B.        Dismissal of the Constructive Discharge Claim**

Defendants next argue that the Court must dismiss the Title VII claim to the extent that it is based on constructive discharge.  The Court agrees.

A plaintiff who voluntarily resigns may assert a claim of constructive discharge when the employer's allegedly discriminatory conduct "creates an atmosphere that is the constructive equivalent of a discharge." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir. 1992); *Hibbard v. Penn-Trafford School Dist.*, Civ. Action No. 13-622, 2014 WL 640253, at *7 (W.D. Pa. Feb. 19, 2014) (Conti, C.J.).  The resignation is treated as if it were an outright dismissal by the employer, which can serve as the basis for a discrimination claim.  *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167–68 (3d Cir. 2001).

Constructive discharge represents a "'worse case' harassment scenario, harassment ratcheted up to the breaking point." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147-48 (2004). "Constructive discharge occurs when an employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006).  Thus, a claimant may argue constructive discharge when an employer was, or should have been, aware of harassment

---

[3] In her Brief Opposing Motion to Dismiss, Plaintiff concedes that binding Third Circuit precedent requires the dismissal of the Title VII claim against Lewis.  (ECF. No. 14, p.3).

and did nothing to stop it. *Duffy*, 265 F.3d at 168 (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084-85 (3d Cir. 1996)).

The relevant test is whether "'the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign.'" *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010) (quoting *Duffy*, 265 F.3d at 167). Factors relevant to such a determination include: (1) threats of termination or suggested resignation, (2) demotions, (3) reductions in pay and benefits, (4) involuntary transfer to less desirable positions, (5) alteration of job responsibilities, and (6) poor performance evaluations. *Id.* at 503 (quoting *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993)). Moreover, "[t]o make out a constructive discharge claim, a plaintiff must show greater severity or pervasiveness than the minimum required to prove a hostile working environment." *Greer v. Mondelez Global, Inc.*, 590 F. App'x 170, 175 n.7 (3d Cir. 2014) (citing *Spencer*, 469 F.3d at 317 n.4).

As detailed in the background section above, the Complaint alleges that Lewis subjected Roadman to unwanted comments and physical contact. (ECF No. 1, ¶¶13-14). Most notably, the Complaint alleges that Lewis grabbed her and rubbed his crotch against her in the medicine room. (*Id.* at ¶14(b)). While this Court offers no opinion as to whether the allegations in the Complaint are sufficient to make out a "basic" hostile work environment claim,[4] these allegations are insufficient to make out a claim for constructive discharge. *See Suders*, 542 U.S. at 147-48.

---

[4] Defendants' Motion to Dismiss Complaint in Part asks only that "the Complaint should be dismissed with respect to the claim of constructive discharge." (ECF No. 7, ¶3). Thus, while the Court dismisses the Title VII claim to the extent it constitutes an "aggravated" constructive discharge claim, the Court offers no opinion as to whether the Complaint features sufficient allegations to make out a "non-aggravated" claim based only on a hostile work environment. *See Suders*, 542 U.S. at 146-147 ("[C]onstructive discharge . . . stems from, and can be regarded as an aggravated case of, sexual harassment or hostile work environment. For an atmosphere of sexual harassment or hostility to be actionable, . . . the offending behavior 'must be

Roadman failed to allege facts which raise a plausible inference that the Defendants imposed conditions on Roadman so intolerable and discriminatory that a reasonable person would have been forced to resign. *See Hibbard*, 2014 WL 640253, at *8 (citing *Levendos v. Stern Entertainment, Inc.*, 860 F.2d 1227, 1231 (3d Cir. 1988)). The Complaint certainly alleges uncouth language and conduct. However, the allegations in this Complaint do not rise to the greater level of severity and pervasiveness required for a constructive discharge claim. *See Greer*, 590 F. App'x at 175 n.7 (citing *Spencer*, 469 F.3d at 317 n.4). As currently alleged, the Complaint fails to establish the frequency or pervasiveness of the conduct, and, beyond the single incident in the medicine room and periodic grabbing or touching of Roadman's buttocks or cheeks, the conduct—primarily consisting of demands for romantic encounters and the use of "babe" or similar names (ECF No. 1, ¶14)—is lacking in the severity required to establish a constructive discharge claim. *See Bumbarger v. New Enterprise Stone and Lime Co., Inc.*, 170 F. Supp. 3d 801, 828-36, 845-47 (W.D. Pa. 2016) (Gibson, J.).

The Complaint, while not particularly clear on the matter, also appears to indicate that, after Roadman voiced her concerns about Lewis's conduct to her superiors, she did not experience any further instances of harassment. Though lacking in a clear chronology of events, the Complaint does not identify any harassment that occurred after Roadman first reported Lewis's conduct to her scheduler during her training—at which point someone other than Lewis completed the remaining week of Roadman's orientation. (ECF No.1, ¶15-16). In essence, the

---

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so intolerable that a reasonable person would have felt compelled to resign.") (internal citations omitted).

Complaint, as written, describes a relatively brief period of misconduct during an initial period of training that ended upon Roadman's first complaint to her scheduler and did not resume thereafter. Thus, as currently alleged in the Complaint, when Roadman resigned, the harassment purportedly perpetrated by Lewis was not at the "breaking point" required by the Supreme Court. *See Suders*, 542 U.S. at 148.

Roadman does not allege that she suffered any alterations to the terms and conditions of her employment,[5] a demotion, a pay cut, or a transfer to compel her to resign. *See id.* at 134; *Hibbard*, 2014 WL 640253, at *7. According to the Complaint, the status of Roadman's employment at the time of her resignation was that Select would endeavor to schedule Roadman and Lewis such that they worked separately, but Select could not guarantee that Roadman and Lewis would never be scheduled to work together. (ECF No. 1, ¶34). Furthermore, when they were scheduled together, the Complaint states that Select had permitted Roadman to miss work and still receive full pay. (*Id.* at ¶ 32). A reasonable person in the circumstances alleged by the Complaint would not feel compelled to resign. *See Colwell*, 602 F.3d at 502; *Bumbarger*, 170 F. Supp. 3d at 845-47.

Additionally, the Complaint alleges that Human Resources "threatened the Plaintiff that if either her or Mr. Lewis said anything else or filed a complaint either one would be fired." (ECF No. 1, ¶ 35). The Complaint asserts that this threat made it intolerable for Roadman to continue her employment and she was forced to resign because she believed that she was being "shunned into silence" and that she "could have been victimized later by Mr. Lewis or his friends." (*Id.* ¶¶

---

[5] That is, any alterations other than being scheduled to work separately from Lewis, at her own request.

36-37). Yet, this alleged threat of termination still fails to articulate a viable claim for constructive discharge.

The threat of termination is one factor relevant to whether a given circumstance is sufficiently severe and pervasive to constitute a constructive discharge. *See Colwell*, 602 F.3d at 503 (quoting *Clowes*, 991 F.2d at 1161). However, mere threats do not rise to the level of an adverse employment action. *Hibbard*, 2014 WL 640253, at *9 (citing *Leitch v. MVM, Inc.*, No. Civ. A. 03–4344, 2004 WL 1638132, at *9 (E.D. Pa. 2004); *Reynolds v. Dep't of Army*, Civ. 08–2944, 2010 WL 2674045, at * 12 (D.N.J. July 22, 2010), *aff'd*, 439 F. App'x 150 (3d Cir. 2011)). In the absence of a plausible showing of constructive discharge, i.e., a showing that Roadman's working conditions were intolerable to a reasonable person in her position at the time of her resignation, a threat of termination is insufficient. *See id*. at *9. For the reasons discussed above, the allegations in the Complaint fail to satisfy the standard articulated by the Supreme Court and the Third Circuit to establish a claim for constructive discharge.[6]

Lastly, Roadman argues that it is improper to consider the reasonableness of Roadman's act of resigning at this time because that would impermissibly put the burden of proving an affirmative defense on Roadman, rather than on the Defendants. (ECF No. 14, pp.3-4). Specifically, Roadman sought to characterize Defendants' objection as an *Ellerth/Faragher* affirmative defense, which would require Defendants to prove (1) that they exercised reasonable care to prevent and promptly correct any sexually harassing behavior and (2) that Roadman

---

[6] The Court directs the parties to *Bumbarger v. New Enterprise Stone and Lime Co., Inc.*, 170 F. Supp. 3d 801 (W.D. Pa. 2016) (Gibson, J.) for an extensive discussion and case citations on hostile work environment and constructive discharge claims. A comparison of the alleged conduct in this case to the conduct in *Bumbarger* and the cases cited therein illustrates that the conduct alleged in Roadman's Complaint is insufficient.

unreasonably failed to take advantage of preventive or corrective opportunities provided by Defendants or to avoid harm otherwise. *See Suders*, 542 U.S. at 137-38 (citing *Faragher v. Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998)).

However, Roadman mischaracterizes Defendants' argument. As Defendants correctly state in their Reply (ECF No. 18, pp.2-3), Roadman failed to plead facts sufficient to support the essential elements of a constructive discharge claim, namely that Roadman's situation was "so intolerable that a reasonable person subject to them would resign," *Spencer*, 469 F.3d at 317 n.4, and that Roadman's working conditions were "so unpleasant or difficult that a reasonable person would have felt compelled to resign.'" *Colwell*, 602 F.3d at 502 (quoting *Duffy*, 265 F.3d at 167); *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 169-70 (3d Cir. 2013). The *Ellerth/Faragher* affirmative defense has not been raised by Defendants. Rather, Defendants correctly assert that the Complaint fails to sufficiently allege facts to make out the essential elements of a claim for constructive discharge.

Therefore, for the reasons stated above, Roadman's constructive discharge claim asserted under Title VII is dismissed without prejudice. The Court, however, emphasizes that the Title VII claim against Select is dismissed only to the extent it asserts a constructive discharge claim. The Court does not dismiss the Title VII claim to the extent it alleges a "basic" hostile work environment claim and offers no opinion as to such a claim. *See supra* note 4.

C.     **Title VII Does Not Preempt Count 2 of the Complaint**

Defendants argue that Count 2 of Roadman's Complaint for negligence/negligent supervision against Select should be dismissed because Title VII preempts this claim. (ECF No. 7, ¶4; ECF No. 8, pp.12-14). Defendants cite to *Shaffer v. Peake*, Civil Action No. 07-298, 2008 WL

794470 (W.D. Pa. Mar. 24, 2008) and *Brown v. General Services Administration*, 425 U.S. 820 (1976) to support their preemption argument.

In response, Roadman asserts that Defendants give "short shrift to the analysis of *Shaffer*, and in fact fail[] to mention a critical aspect of the *Shaffer* decision." (ECF No. 14, p.5). Roadman purports to diagnose the flaw in Defendants' preemption argument by suggesting that the "highly personal violation" exception to the purported general rule of preemption, as articulated by the U.S. Court of Appeals for the Ninth Circuit in *Brock v. United States*, 64 F.3d 1421 (9th Cir. 1995), applies to the allegations of the Complaint because Lewis's alleged sexual assault of Roadman in the medicine room is a "highly personal violation." (ECF No. 14, pp.5-6).

Roadman is correct that Defendants give "short shrift to the analysis of *Shaffer* and in fact fail[] to mention a critical aspect of the *Shaffer* decision." However, Roadman also overlooked a critical aspect of the *Shaffer* decision.

The preemptive power of Title VII articulated in *Shaffer* and, more importantly, in *Brown* expressly and clearly applies only to *federal* employees. *Shaffer*, 2008 WL 794470, at *17; *Brown*, 425 U.S. at 821-35. As *Shaffer* explains, "[i]n *Brown*, the Supreme Court construed § 2000e-16, the provision of Title VII *applicable to the federal government*, to be the exclusive remedy for *federal employees* alleging employment-related discrimination on the basis of race, color, religion, sex, or national origin." *Shaffer*, 2008 WL 794470, at *17 (citing *Brown*, 425 U.S. at 821-835) (emphasis added). As this Court detailed in *Shaffer*, the Supreme Court in *Brown* explained that Congress intended 42 U.S.C. § 2000e-16 to be "an exclusive, pre-emptive administrative and judicial scheme for the redress of *federal employment* discrimination." *Id.* at *17 (quoting *Brown*, 425 U.S. at 829) (emphasis added).

The present case does not involve federal employment.[7] Therefore, regardless of whether this Court and the Third Circuit would follow the lead of the Ninth Circuit in *Brock*, *Brown* and *Shaffer* simply do not apply in this case because this case involves a private sector employee rather than a federal employee.[8] Count 2 of the Complaint is not preempted by Title VII and will not be dismissed on that basis.

### D. Pennsylvania Workers' Compensation Act Does Not Bar Count 2

Defendants next contend that Roadman's negligence/negligent supervision claim against Select is barred by the Pennsylvania Workers' Compensation Act ("PWCA"). (ECF No. 8, p.14). Citing to 77 Pa. Cons. Stat. § 481(a) and *Barber v. Pittsburgh Corning Corp.*, 555 A.2d 766, 769-70 (Pa. 1989), Defendants argue that the PWCA "generally provides the exclusive remedy for an employee who claims to have been injured in the work place, and grants the employer immunity from tort suits by employees." (ECF No. 8, p.14). Defendants continue by arguing that the "personal animus" exception to the PWCA-based "exclusivity/immunity doctrine" is not applicable to this case. (*Id.* at pp.14-16). Roadman argues the opposite, i.e., Lewis harassed/attacked Roadman for personal reasons. (ECF No. 14, pp.6-7).

As a general matter, the PWCA provides the sole remedy for injuries sustained during the course of employment. *See* 77 Pa. Cons. Stat. § 481; *see also Matczak v. Frankford Candy & Chocolate Co.*, 136 F.3d 933, 940 (3d Cir.1997) (citing *Dugan v. Bell Tel. of Pennsylvania*, 876 F. Supp. 713, 723 (W.D. Pa. 1994)). Yet, as both parties discussed, there is a "personal animus exception where the

---

[7] The Complaint identifies Defendants as Select, a Missouri corporation doing business in Pennsylvania as a specialty care hospital, and as Lewis, an individual citizen and employee of Select. (ECF No. 1, ¶¶4-6).
[8] The Court notes, however, that, if *Shaffer* and *Brown*'s theory of preemption applied to Count 2, Roadman's argument as to the applicability of the *Brock* exception would prevail for the same reasons that the Court holds that "personal animus" exception applies *infra* Part V.D of this Memorandum Opinion.

alleged injury was motivated by personal reasons as opposed to generalized contempt or hatred and did not arise in the course of employment." *Ahmed v. Lowe's Home Ctrs., Inc.*, 346 F. App'x 816, 821 (3d Cir. 2009); 77 Pa. Cons. Stat. § 411(1).

Under this exception, claims for injuries that are not work-related and are the result of personal animus may proceed. *See Forrest v. Owen J. Roberts School Dist.*, Civil Action No. 09-3014, 2011 WL 1549492, at *15 (E.D. Pa. Apr. 1, 2011) (citing *Wills Eye Hospital v. Workmen's Compensation Appeal Bd. (Dewaele)*, 582 A.2d 39 (Pa. Commw. Ct. 1988), *aff'd*, 582 A.2d 857 (Pa.1989)). Claims that fall under the personal animus exception may include claims stemming from sexual harassment. *See, e.g.*, *Heath v. Workmen's Compensation Appeal Bd. (Bd. Of Probation and Parole) (Heath I)*, 811 A.2d 90, 96 (Pa. Commw. Ct. 2002), *vacated and remanded on other grounds*, 860 A.2d 25 (Pa. 2004) ("In Pennsylvania, these [suits for injuries occurring as a result of sexual harassment in the workplace] have been appealed to the Superior Court as tort actions rather than this Court, and the Superior Court has consistently held that the third party exception of Section 301(c)(1) operates to take these cases out of the realm of workers' compensation law."); *Schweitzer v. Lockwell Int'l*, 586 A.2d 383, 385 (Pa. Super. Ct. 1991) (holding that, pursuant to the personal animus exclusion of the PWCA, employee was not required to pursue a remedy against her employer under the PWCA because the sexual harassment was personal in nature and not part of the proper employer/employee relationship); *Dunn v. Warhol*, 778 F. Supp. 242, 244 (E.D. Pa. 1991) (in a Title VII case, relying on *Schweitzer* and stating that the court "cannot conceive of an instance of sexual harassment of an employee by an employer or others in the workplace which properly could be characterized as employment related.").

At this early stage, the Court concludes that Roadman has pled sufficient facts to invoke the personal animus exception. The allegations in the Complaint show that Lewis's alleged conduct may have been of a personal nature, i.e., sexual interest in Roadman. While Defendants highlight a potential inconsistency within the Complaint by which the Complaint appears to allege both a pattern of harassing female employees that arguably relates to the condition of the workplace and a personal animosity targeted at Roadman (ECF No. 18, pp. 4-5), at the motion-to-dismiss stage, the Court must accept all factual allegations in the Complaint and draw all inferences from the alleged facts in the light most favorable to the non-moving party. *Phillips*, 515 F.3d at 228 (citing *Worldcom*, 343 F.3d at 653). Here, although the Complaint may lack some clarity, it nevertheless presents sufficient factual content that allows the Court to draw the reasonable inference that Lewis's conduct falls under the personal animus exception to the exclusivity provision of the PWCA. *See Sheridan*, 609 F.3d at 262 n.27 (quoting *Iqbal*, 556 U.S. at 678).

Moreover, Defendants briefly raise the issue that, because Select is a business entity, it can possess personal animus only through a theory of vicarious liability for Lewis's alleged misconduct. (ECF No. 8, pp.16-18). Accordingly, Defendants argue that the Complaint "fails to plead facts demonstrating that such alleged tortious conduct was within the scope of Lewis's employment with Select as an R.N." (*Id.* at p.18).

The Court disagrees. The Complaint presents sufficient factual content that allows the Court to draw the reasonable inference that Lewis was acting within the scope of his employment. *See Sheridan*, 609 F.3d at 262 n.27 (quoting *Iqbal*, 556 U.S. at 678). While the Court will not venture into a detailed analysis of agency principles, the Court notes that the Complaint identifies Lewis

as "a registered nurse who worked for Select for several years prior to [Roadman] becoming an employee" (ECF No. 1 ¶11) and that, despite the lack of clarity in the Complaint as to the timing and location of events, a charitable reading of the Complaint suggests that all or almost all of the allegations occurred during work hours, occurred at Select's place of business, occurred when Lewis was under the control of Select, occurred such that Select was or should have been aware of Lewis's conduct, and occurred despite the awareness of at least some other employees. *See Shavers v. Sunfresh Food Service, Inc.*, Civil Action No. 09-1377, 2010 WL 2595558, at *3 (W.D. Pa. June 2, 2010) (citing *Costa v. Roxborough Memorial Hosp.*, 708 A.2d 490, 493 (Pa. Super. Ct. 1998)) (discussing the scope of employment standard under Pennsylvania law). Thus, at this stage, the Court concludes that Roadman has pled sufficient facts to show that Lewis may have acted within the scope of his employment with Select.

Consequently, this Court will not dismiss Count 2 of the Complaint on the basis that the PWCA provides the exclusive remedy for the alleged conduct.

### E. Battery and Constructive Discharge

Defendants also move for the dismissal of the battery claim asserted in Count 3 of the Complaint to the extent that it alleges the purported battery in the medicine room resulted in a constructive discharge. (ECF No. 7, ¶5).

For the same reasons discussed above in Part V.B of this Memorandum Opinion, Count 3 is dismissed *only* to the extent that the Complaint asserts that the alleged battery resulted in constructive discharge. Otherwise, Court 3 remains as a common law battery claim against Lewis.[9]

---

[9] The Court also recognizes Defendants' argument that, "in order to maintain a claim of constructive discharge under Pennsylvania law, a plaintiff must establish that her purported 'termination' in this regard

**F.      Dismissal of Plaintiff's Demand for Attorney's Fees for Count 2 and Count 3**

Lastly, Defendants argue that Roadman's claims for attorney's fees with respect to the state law tort claims asserted in Count 2 and Count 3 should be stricken as a matter of law.  (ECF No. 7, ¶6; ECF No. 8, p.20).  The Court agrees.

Under Pennsylvania law, litigants "bear responsibility for their own attorneys' fees in the absence of express statutory authorization for fee awards, contractual fee-shifting, or some other recognized exception."  *Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 64 A.3d 1058, 1062-63 (Pa. 2013) (citing *Merlino v. Delaware County*, 728 A.2d 949, 951 (Pa. 1999)).

Here, Plaintiff's Complaint demands attorney's fees with respect to Count 2 and Count 3, which are claims under the common law of Pennsylvania for "negligence/negligence supervision" and battery respectively.  (ECF No. 1 ¶¶ 43-64).  Yet, the Complaint fails to allege the existence of statutory, contractual, or other authority to support this demand for attorney's fees for Count 2 and Count 3.[10]

Thus, the claim for attorney's fees in regard to Count 2 and Count 3 of the Complaint are dismissed with prejudice.

---

violates recognized public policy."  (ECF No. 8, pp.19-20).  While the Court will not now rule on Defendants' argument because the Court dismisses the constructive discharge claim on other grounds, the Court would ask Roadman to consider Defendants' argument and cited case law if Roadman chooses to file an amended complaint as to constructive discharge.

[10] In her Brief Opposing Motion to Dismiss, Roadman concedes that "there is no precedent for the Court to award attorney's fees if she is successful on her battery claim and this request for damages must be stricken."  (ECF. No. 14, p.3).  Roadman makes no such concession in regard to her request for attorney's fees for her negligence/negligent supervision claim, nor does Roadman's brief otherwise acknowledge this argument.  But, as stated above, the same Pennsylvania standard applies to both Count 2 and Count 3.

**VI.    Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss Complaint in Part (ECF No. 7) will be granted in part and denied in part.  Roadman's Title VII claim asserted against Lewis and demand for attorney's fees as to Count 2 and Count 3 are dismissed with prejudice because amendment would be futile.  *See Phillips*, 515 F.3d at 236.  Roadman's Title VII claim and battery claim against Select are dismissed only to the extent these claims assert constructive discharge claims.  Roadman is permitted to make a curative amendment as to her constructive discharge claim(s) if appropriate.

In all other regards, Defendants' Motion is denied.

A corresponding order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONNA ROADMAN,** | ) | **Case No. 3:16-cv-246** |
| | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SELECT SPECIALTY HOSPITAL and** | ) | |
| **RONALD LEWIS,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

NOW, this $\underline{22^{\text{nd}}}$ day of September 2017, for the reasons set forth in the accompanying

Memorandum Opinion, Defendants' Motion to Dismiss Complaint in Part (ECF No. 7) is

**GRANTED IN PART** and **DENIED IN PART**.

It is **HEREBY ORDERED** as follows:

1. To the extent it is asserted against Defendant Ronald Lewis, Plaintiff's Title VII
   claim is dismissed with prejudice.

2. Plaintiff's demands for attorney's fees in regard to Count 2 and Count 3 of the
   Complaint are dismissed with prejudice.

3. Plaintiff's Title VII claim against Defendant Specialty Hospital Johnstown, Inc. is
   dismissed only to the extent it asserts a constructive discharge claim.

4. Count 3 is dismissed only to the extent it asserts that the alleged battery resulted

in constructive discharge.

5. Plaintiff is granted leave to amend her Complaint with respect to the constructive discharge claim(s). If she chooses to do so, Plaintiff shall file her amended complaint **on or before October 20, 2017**.

Defendants' Motion is **DENIED** in all other regards.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**