IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DONNA ROADMAN, | ) | Case No. 3:16-cv-246 |
| --- | --- | --- |
| | ) | |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SELECT SPECIALTY HOSPITAL and | ) | |
| RONALD LEWIS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. Introduction

Pending before this Court is Defendants' Motion to Dismiss Amended Complaint in Part. (ECF No. 32.) This Motion is fully briefed (ECF Nos. 33, 34, 38), and is ripe for disposition.

This case arises from Plaintiff Donna Roadman's ("Roadman") allegations that Defendant Ronald Lewis ("Lewis") sexually harassed her at her workplace, Defendant Select Specialty Hospital ("Select"). As discussed *infra*, this Court previously issued a Memorandum Opinion and Order dismissing, in part, Roadman's initial Complaint. *See Roadman v. Select Specialty Hospital*, 3:16-cv-246, 2017 WL 4236581 (W.D. Pa. Sept. 22, 2017) (Gibson, J.). Roadman has sought to remedy some of the deficient portions of her Complaint, namely her constructive discharge claims in Count 1 and Count 3, by filing an Amended Complaint. (*See* ECF No. 30.) Defendants ask this Court to, again, hold that Roadman's constructive discharge claims are insufficient. (*See* ECF Nos. 32, 33, 38.)

Because Roadman's Amended Complaint still fails to plead cognizable constructive discharge claims, and, for the reasons that follow, Defendants' Motion to Dismiss Amended Complaint in Part is **GRANTED**.

## II. Jurisdiction & Venue

The Court has jurisdiction over Roadman's federal claim under Title VII pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the alleged events giving rise to Roadman's claims occurred in Johnstown, Cambria County, Pennsylvania. (ECF No. 30 ¶ 2.)

## III. Factual Allegations Set Forth in the Amended Complaint

The following facts, which the Court accepts as true in deciding Defendants' Motion to Dismiss Amended Complaint in Part, are alleged in the Amended Complaint. (*See* ECF No. 30.)

Defendant Select, a specialty care hospital offering rehabilitative care and long term acute care, hired Roadman as a registered nurse to work at its Johnstown location on July 7, 2015. (*Id.* ¶¶ 6-8.) During the first week of her employment, Roadman did orientation. (*Id.* ¶ 10.) During the second week of Roadman's employment, Roadman was introduced to Lewis, a registered nurse who had worked for Select for several years prior to Roadman's employment. (*Id.* ¶¶ 11-12.) Select assigned Lewis to train Roadman for her new position. (*Id.* ¶ 13.)

Before beginning her training, a number of other employees made comments to Roadman concerning Lewis's behavior. (*Id.* ¶ 14.) These comments included: (1) a nurse named Jamie telling Roadman to "be careful" around Lewis because "he hit on her," (2) Jamie suggesting "being mean" to Lewis so that he would not harass or continue to harass her, (3) a respiratory

therapist informing Roadman that Lewis liked her and wanted to date her, and (4) another respiratory therapist joking in front of Lewis and Roadman, therein "implying knowledge" of Lewis's intentions, that Roadman would never go out with Lewis. (*Id.* ¶ 14.)

Thereafter, the Complaint alleges that, with approval and knowledge of Select, Lewis created and maintained a hostile work environment for Roadman because of her gender by engaging in the following behavior: (1) demanding dates, intimating that Roadman should sleep with him, touching Roadman's buttocks, and touching Roadman's cheeks; (2) calling Roadman "babe" and "hun" and commenting on Roadman's appearance by stating Roadman was "cute," "pretty," or "sexy" on "diverse dates"; (3) texting Roadman on her cell phone number that he acquired for purposes of orientation and calling Roadman "babe" or "hun" in those messages; (4) scolding, degrading, and belittling Roadman concerning her nursing skills and job performance when Roadman refused his unwelcome advances; (5) grabbing Roadman by the waist and grinding his crotch into her buttocks to the point where Roadman "felt Mr. Lewis's erect penis against her" on one occasion in the medicine room; and (6) "by other such actions too numerous to list in their entirety." (*Id.* ¶ 15.) Roadman also alleges that Lewis's references to Roadman as "babe" and "hun" and the touching of Roadman's buttocks and cheeks "regularly occurred in front of staff and were open and notorious to the other employees of Select." (*Id.* ¶ 16.)

Roadman reported this behavior to her scheduler, Renee Lightcap ("Lightcap") and requested to be trained by someone other than Lewis. (*Id.* ¶ 17.) Lightcap complied, and Ronald Lindros ("Lindros") completed Roadman's remaining week of orientation. (*Id.* ¶ 18.) Roadman completed her orientation with Lindros, but she was scheduled to work at the same time as Lewis

for several days. (*Id.* ¶ 19.) Roadman called off work on these days to avoid working with Lewis. (*Id.* ¶ 20.)

After returning from vacation, Roadman's supervisor, Danielle Smorto ("Smorto"), telephoned Roadman and "asked her what happened." (*Id.* ¶ 21.) Roadman reported the alleged harassment to Smorto by telephone and sent a follow-up e-mail. (*Id.* ¶¶ 23-23.) Smorto told Roadman that she would investigate the situation, instructed Roadman not to discuss the matters with anyone, and changed the weekend work schedule so that Roadman and Lewis would not be working together. (*Id.* ¶¶ 25-27.)

Approximately one week after speaking with Smorto regarding the alleged harassment, Smorto called Roadman into a meeting with Smorto and Matt Gost ("Gost"), a human resources employee. (*Id.* ¶ 28.) At this meeting, Smorto and Gost told Roadman that they had "investigated her complaints with Mr. Lewis, exclusively" and that Lewis had denied her accusations. (*Id.* ¶¶ 29-30.) Roadman then informed Smorto and Gost that she could not work with Lewis, requested that she not be scheduled with Lewis, and advised them that she had received inappropriate text messages from Lewis. (*Id.* ¶¶ 31-32.) After this meeting, Roadman also discussed the matter with Barb Foster ("Foster")—whose position, if any, with Select is not set forth in the Amended Complaint—and stated that she did not want to work with Lewis. (*Id.* ¶ 33.) Roadman provided copies of the above-referenced text messages to Foster and told her that Jamie Cotterman—presumably the same nurse who told Roadman to "be[] mean" to Lewis so he would not harass her—could corroborate her concerns. (*Id.* ¶¶ 34-35.) The Complaint alleges that Select was aware of Roadman's concerns regarding Lewis because, on several occasions, Roadman called off work when she was scheduled to work with Lewis and still received pay. (*Id.* ¶ 36.)

-4-

Roadman had an additional meeting with Human Resources, during which she was informed of the effort to schedule her and Lewis for different shifts, but that Human Resources could not "guarantee" that she and Lewis would not be scheduled together. (*Id.* ¶¶ 37-38.) At this second meeting, Human Resources "threatened the Plaintiff that if either her [sic] or Mr. Lewis said anything else or filed a complaint either one would be fired." (*Id.* ¶ 39.) The Amended Complaint alleges that this threat made it intolerable for Roadman to continue her employment because she believed that she was being "shunned into silence" and that she "could have been victimized later by Mr. Lewis or his friends." (*Id.* ¶ 40.) At no time did Human Resources discuss or offer Roadman the opportunity to transfer to a different Select facility. (*Id.* ¶ 41.) The Amended Complaint further alleges that Roadman was "forced to resign" on August 26, 2016.[1] (*Id.* ¶ 42.)

## IV. Procedural History

Roadman filed a charge of discrimination with the Equal Employment Opportunity Commission and received a Notice of Right to Sue. (*Id.* ¶ 43.) Roadman then filed her Complaint with the Court on November 18, 2016. (ECF No. 1.) Defendants filed their Motion to Dismiss Complaint in Part on February 7, 2017 (ECF No. 7), which this Court granted in part and denied in part through Memorandum Opinion and Order of September 22, 2017. *See Roadman*, 2017 WL 4236581. In this prior Memorandum Opinion and Order, the Court dismissed Roadman's Title VII claims asserted against Lewis and Roadman's demand for attorney's fees as to Count 2 and Count 3 with prejudice. *Id.* at *9. The Court also dismissed Roadman's Title VII claim and battery

---

[1] As pointed out by Defendants (ECF No. 33 at 5), the date of April 26, 2016 provided in the Amended Complaint appears to be a typographical error and should read August 26, 2015.

-5-

claim against Select only to the extent that those claims purported to assert constructive discharge claims, but granted Roadman leave to amend on or before October 20, 2017. *Id.*

On October 20, 2017, Roadman filed her Amended Complaint. (*See* ECF No. 30.) The Court construes the Amended Complaint to feature three counts: (1) a claim for both a hostile work environment and for constructive discharge under Title VII of the Civil Rights Act of 1964 against Select; (2) a claim for "negligence/negligent supervision" against Select; and (3) a claim for both battery and constructive discharge against Lewis. Defendants filed their Motion to Dismiss Amended Complaint in Part and their accompanying brief in support thereof on November 3, 2017. (ECF Nos. 32, 33.) Roadman filed her Brief Opposition Motion to Dismiss on November 27, 2017 (ECF No. 34), and Defendants filed their Reply Brief on December 15, 2017. (ECF No. 38.)

## V. Standard of Review

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But, detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[2] First, the court must "tak[e] note of the elements

---

[2] Although *Iqbal* described the process as a "two-pronged approach," *Iqbal*, 556 U.S. at 679, the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch*

-6-

[the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## VI. Discussion

Defendants have moved to dismiss portions of the Amended Complaint, namely any portions of Count 1 and Count 3 that purport to bring claims for constructive discharge. The Court previously dismissed these two counts only to the extent that they alleged claims for constructive discharge. *See Roadman*, 2017 WL 4236581, at *9. Because Roadman's handful of minor changes between the Complaint and the Amended Complaint fail to remedy the insufficiencies of her constructive discharge claims, the Court agrees with Defendants and, again, will dismiss Count 1 and Count 3 to the extent they plead claims for constructive discharge. Furthermore, given this unsuccessful effort to amend these constructive discharge claims, this

---

*v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010)).

second dismissal is with prejudice because the Court finds that further amendment would be futile. *See Phillips*, 515 F.3d at 236.

As this Court explained in its prior Memorandum Opinion and Order of September 22, 2017:

> A plaintiff who voluntarily resigns may assert a claim of constructive discharge when the employer's allegedly discriminatory conduct "creates an atmosphere that is the constructive equivalent of a discharge." *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir. 1992); *Hibbard v. Penn-Trafford School Dist.*, Civ. Action No. 13-622, 2014 WL 640253, at *7 (W.D. Pa. Feb. 19, 2014) (Conti, C.J.). The resignation is treated as if it were an outright dismissal by the employer, which can serve as the basis for a discrimination claim. *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167–68 (3d Cir. 2001).
>
> Constructive discharge represents a "'worse case' harassment scenario, harassment ratcheted up to the breaking point." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 147-48 (2004). "Constructive discharge occurs when an employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006). Thus, a claimant may argue constructive discharge when an employer was, or should have been, aware of harassment and did nothing to stop it. *Duffy*, 265 F.3d at 168 (quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084-85 (3d Cir. 1996)).
>
> The relevant test is whether "'the employer permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign.'" *Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010) (quoting *Duffy*, 265 F.3d at 167). Factors relevant to such a determination include: (1) threats of termination or suggested resignation, (2) demotions, (3) reductions in pay and benefits, (4) involuntary transfer to less desirable positions, (5) alteration of job responsibilities, and (6) poor performance evaluations. *Id.* at 503 (quoting *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993)). Moreover, "[t]o make out a constructive discharge claim, a plaintiff must show greater severity or pervasiveness than the minimum required to prove a hostile working environment." *Greer v. Mondelez Global, Inc.*, 590 F. App'x 170, 175 n.7 (3d Cir. 2014) (citing *Spencer*, 469 F.3d at 317 n.4).

*Roadman*, 2017 WL 4236581, at *3-*4

As with her original Complaint, Roadman's Amended Complaint has failed to allege sufficient facts that Defendants imposed conditions on Roadman so intolerable and discriminatory that a reasonable person would have been forced to resign. *See Hibbard*, 2014 WL 640253, at *8 (citing *Levendos v. Stern Entm't, Inc.*, 860 F.2d 1227, 1231 (3d Cir. 1988)). The Court will not now repeat the reasons provided in our prior Memorandum Opinion and Order for our dismissal of Roadman's constructive discharge claims because those reasons are articulated therein and need not be reiterated here. *See Roadman*, 2017 WL 4236581, at *3-*6, *8-*9. Instead, the Court hereby incorporates its prior reasoning by reference here. *See id.*

However, the Court will address the minor additional allegations included in the Amended Complaint and Roadman's new legal arguments and citations to case law. The only new allegations appearing in the Amended Complaint are that: (1) Lewis "scold[ed], degrade[d], and belittle[d] the Plaintiff concerning her nursing skills and job performance" when she refused his "unwelcome advances"; (2) Lewis's references to Roadman as "babe" and "hun" and touching of Roadman's buttocks and cheeks "regularly occurred in front of state and were open and notorious to the other employees of Select"; and (3) "at no time did Human [R]esources discuss or offer [Roadman] the opportunity to transfer to a different [S]elect facility." (ECF No. 30 ¶¶ 15, 16, 41.) These new allegations—to any minimal extent in which they *might* go beyond the allegations of the original Complaint—do not sufficiently heighten the severity or pervasiveness alleged in the original Complaint to the greater level of severity and pervasiveness required for a construct discharge claim. *See Greer*, 590 F. App'x. at 175 n.7 (citing *Spencer*, 469 F.3d at 317 n.4).

All other new or altered allegations contained in the Amended Complaint relate to Roadman's subjective reaction to and perceptions of the alleged harassment or are minor wording

changes (*see, e.g.*, ECF No. 30 at ¶¶ 19-20), which are not relevant to the objective inquiry of whether Defendants imposed conditions on Roadman so intolerable and discriminatory that a reasonable person would have been forced to resign. *See Hibbard*, 2014 WL 640253, at *8 (citing *Levendos*, 860 F.2d at 1231).

As in the original Complaint, Roadman's Amended Complaint does not allege that she suffered any alterations to the terms and conditions of her employment, a demotion, a pay cut, or a transfer to compel her to resign, nor does Roadman allege that *any* harassment continued after she first reported it to her supervisor. *See Suders*, 542 U.S. at 134; *Hibbard*, 2014 WL 640253, at *7. As this Court wrote previously:

> In essence, the Complaint, as written, describes a relatively brief period of misconduct during an initial period of training that ended upon Roadman's first complaint to her scheduler and did not resume thereafter. Thus, as currently alleged in the Complaint, when Roadman resigned, the harassment purportedly perpetrated by Lewis was not at the "breaking point" required by the Supreme Court. *See Suders*, 542 U.S. at 148.

*Roadman*, 2017 WL 4236581, at *5. This prior statement and the remainder of the reasoning provided in this Court's previous Memorandum Opinion and Order apply equally to the Amended Complaint. *See id.* at *3-*6, *8-*9.

Roadman offers extensive argument in her Brief Opposing Motion to Dismiss regarding the so-called *Ellerth/Farragher* defense. (*See* ECF No. 34 at 6-10.) However, as this Court explained previously, Defendants have not raised the *Ellerth/Farragher* affirmative defense. *See Suders*, 542 U.S. at 137-38 (citing *Faragher v. Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998)). Defendants, instead, argue that the Amended Complaint fails to allege

sufficient facts to make out the essential elements of a claim for constructive discharge—an argument with which this Court agrees. *See Roadman*, 2017 WL 4236581, at *6.

In her Brief Opposing Motion to Dismiss, Roadman cites to four cases, *see Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986); *Donaldson v. Lensbouer*, 15-cv-63, 2017 WL 2199006 (W.D. Pa. May 18, 2017) (Gibson, J.); *Bedford v. Se. Pa. Transp. Auth.*, 867 F. Supp. 288, 297 (E.D. Pa. 1994); *Winkler v. Progressive Bus. Publ'ns*, 200 F. Supp. 3d 514, 519 (E.D. Pa. 2016), that she did not reference in opposing Defendants' first Motion to Dismiss. (*See* ECF No. 34 at 4-5.) However, these cases are easily distinguishable.

First, *Meritor*, *Donaldson*, and, *Bedford* all address only "basic" hostile work environment claims—not heightened claims for constructive discharge. *See generally Meritor*, 477 U.S. 57; *Donaldson*, 2017 WL 2199006; *Bedford*, 867 F. Supp. 288. Second, *Winkler*—the only cited case to involve a constructive discharge claim—is not binding on this Court and features substantially more severe alleged conduct. *See Winkler*, 200 F. Supp. 3d at 517-18 (featuring a complaint with allegations that the defendant "touched [the plaintiff] in an intimate area inside her clothing while making sexually charged remarks," that the defendant had been making sexually charged comments and actions for nine months prior to the above-referenced incident, that the plaintiff had previously informed management-level employees about the nine months of behavior, that the defendant admitted to the inappropriate conduct and told management that he was impulsive and had gotten into trouble before, and that, despite this confession, management took no action). Thus, the cases cited by Roadman are inapposite because they either do not involve constructive discharge claims or do not feature alleged misconduct that is comparable to the allegations of the Amended Complaint.

-11-

Lastly, this Court now dismisses Roadman's constructive discharge claims with prejudice. Whether to grant a party leave to amend a pleading is within the sound discretion of the trial judge. *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 116 (3d Cir. 2003); *Campbell v. M&T Bank*, Case No. 3:16-cv-118, 2018 WL 401523, at *12-*13 (W.D. Pa. Jan. 12, 2018) (Gibson, J.). This Court has discretion to deny leave to amend if, *inter alia*, it is apparent from the record that the amendment would be futile. *Fraser*, 352. F.3d at 116 (citing *Foman v. Davis*, 371 U.S. 17 (1962)); *Campbell*, 2018 WL 401523, at *12-*13. "Futility" challenges an amendment's legal sufficiency. *Foman*, 371 U.S. at 182. In assessing futility, courts apply the same standard of legal sufficiency as applied under Federal Rule of Civil Procedure 12(b)(6). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988) ("Futility is determined by the likelihood that the content of the amendment will survive a renewed motion to dismiss"). The Third Circuit has noted that "an amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.*

Roadman has already had the opportunity to remedy the specifically-identified insufficiencies of her original Complaint. *See Roadman*, 2017 WL 4236581. As discussed *supra*, Roadman was unable to cure these insufficiencies, and nothing before the Court suggests that the opportunity to file a third complaint would be any more successful. Therefore, the Court finds that further amended would be futile and dismisses Roadman's constructive discharge claims with prejudice. *See Campbell*, 2018 WL 401523, at *12-*13.

## VII. Conclusion

For the reasons stated above, Defendants' Motion to Dismiss Amended Complaint in Part (ECF No. 32) will be granted. In sum, the Amended Complaint fails to plausibly plead allegations sufficient to establish a claim for constructive discharge under the standard articulated by the United States Supreme Court and the United States Court of Appeals for the Third Circuit. *See Roadman*, 2017 WL 4236581, at *3-*6; *Bumbarger v. New Enterprise Stone and Lime Co., Inc.*, 170 F. Supp. 3d 801 (W.D. Pa. 2016) (Gibson, J.) (offering an extensive discussion and case citations on hostile work environment and constructive discharge claims).

Accordingly, Roadman's Title VII claim and battery claims are dismissed with prejudice only to the extent these claims assert constructive discharge claims. Otherwise, this Court takes no action and offers no opinion as to the "basic" hostile work environment claim against Select in Count 1, the negligence/negligent supervision claim against Select in Count 2, or the battery claim against Lewis in Count 3.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA ROADMAN, | ) | Case No. 3:16-cv-246 |
| | ) | |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SELECT SPECIALTY HOSPITAL and | ) | |
| RONALD LEWIS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

NOW, this 23rd day of January 2018, for the reasons set forth in the accompanying Memorandum Opinion, Defendants' Motion to Dismiss Amended Complaint in Part (ECF No. 32) is **GRANTED**. It is **HEREBY ORDERED** as follows:

1. Plaintiff's Title VII claim (Count 1) against Defendant Specialty Hospital Johnstown, Inc. is **DISMISSED** only to the extent it asserts a constructive discharge claim.

2. Plaintiff's battery claim (Count 3) is **DISMISSED** only to the extent it asserts a constructive discharge claim.

3. Plaintiff is **DENIED** leave to amend her Amended Complaint with respect to the constructive discharge claims.

BY THE COURT:

_Kim R. Gibson_
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE