IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DONNA ROADMAN, | ) | Case No. 3:16-cv-246 |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| SELECT SPECIALTY HOSPITAL and | ) | |
| RONALD LEWIS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

I. **Introduction**

Pending before this Court is Plaintiff's Motion for Extension of Time. (ECF No. 55.) All parties have filed briefs (ECF Nos. 55, 56) and participated in oral argument (ECF No. 58) on this Motion, and it is ripe for disposition.

This case arises from Plaintiff Donna Roadman's ("Roadman") allegations that Defendant Ronald Lewis ("Lewis") sexually harassed her at her workplace, Defendant Select Specialty Hospital ("Select") (collectively, "Defendants"). *See Roadman v. Select Specialty Hosp.*, Case No. 3:16-cv-246, 2018 WL 557922, at *1 (W.D. Pa. Jan. 23, 2018) (Gibson, J.); *Roadman v. Select Specialty Hosp.*, 3:16-cv-246, 2017 WL 4236581 (W.D. Pa. Sept. 22, 2017) (Gibson, J.). Roadman asks this Court to extend the deadline for completion of discovery, which is currently set for November 2, 2018, in order to allow her to conduct additional depositions and request production of various documents. (ECF No. 55 ¶¶ 2, 4-5.) Because Roadman failed to show good cause for extending discovery, Plaintiff's Motion for Extension of Time (ECF No. 55) is **DENIED**.

## II. Factual Background[1]

Defendant Select, a specialty care hospital offering rehabilitative care and long-term acute care, hired Roadman as a registered nurse to work at its Johnstown location on July 7, 2015. (ECF No. 30 ¶¶ 6-8.) During the first week of her employment, Roadman did orientation. (*Id.* ¶ 10.) During the second week of her employment, Roadman was introduced to Lewis, a registered nurse who had worked for Select for several years. (*Id.* ¶¶ 11-12.) Select assigned Lewis to train Roadman for her new position. (*Id.* ¶ 13.)

Before beginning her training, a number of other employees made comments to Roadman concerning Lewis's behavior. (*Id.* ¶ 14.) These comments included: (1) a nurse named Jamie telling Roadman to "be careful" around Lewis because "he hit on her," (2) Jamie suggesting "being mean" to Lewis so that he would not harass or continue to harass her, (3) a respiratory therapist informing Roadman that Lewis liked her and wanted to date her, and (4) another respiratory therapist joking in front of Lewis and Roadman, therein "implying knowledge" of Lewis's intentions, that Roadman would never go out with Lewis. (*Id.* ¶ 14.)

Thereafter, the Amended Complaint alleges that, with approval and knowledge of Select, Lewis created and maintained a hostile work environment for Roadman because of her gender by engaging in the following behavior: (1) demanding dates, intimating that Roadman should sleep with him, touching Roadman's buttocks, and touching Roadman's cheeks; (2) calling Roadman "babe" and "hun" and commenting on Roadman's appearance by stating Roadman

---

[1] The Court draws this factual background from its Memorandum Opinion and Order of January 23, 2018 that decided Defendants' Motion to Dismiss the Amended Complaint in Part. *See Roadman*, 2018 WL 557922, at *1-*2. Thus, this factual background is derived from the allegations made by Plaintiff in her Amended Complaint. (*See* ECF No. 30.)

was "cute," "pretty," and "sexy"; (3) texting Roadman on her cell phone number that he acquired for purposes of orientation and calling Roadman "babe" or "hun" in those messages; (4) scolding, degrading, and belittling Roadman concerning her nursing skills and job performance when Roadman refused his unwelcome advances; (5) grabbing Roadman by the waist and grinding his crotch into her buttocks to the point where Roadman "felt Mr. Lewis's erect penis against her" on one occasion in the medicine room; and (6) "by other such actions too numerous to list in their entirety." (*Id.* ¶ 15.) Roadman also alleges that Lewis's references to Roadman as "babe" and "hun" and the touching of Roadman's buttocks and cheeks "regularly occurred in front of staff and were open and notorious to the other employees of Select." (*Id.* ¶ 16.)

Roadman reported this behavior to her scheduler, Renee Lightcap ("Lightcap") and requested to be trained by someone other than Lewis. (*Id.* ¶ 17.) Lightcap complied, and Ronald Lindros ("Lindros") completed Roadman's remaining week of orientation. (*Id.* ¶ 18.) Roadman completed her orientation with Lindros, but she was scheduled to work at the same time as Lewis for several days. (*Id.* ¶ 19.) Roadman called off work on these days to avoid working with Lewis. (*Id.* ¶ 20.)

After returning from vacation, Roadman's supervisor, Danielle Smorto ("Smorto"), telephoned Roadman and "asked her what happened." (*Id.* ¶ 21.) Roadman reported the alleged harassment to Smorto by telephone and sent a follow-up e-mail. (*Id.* ¶¶ 22-23.) Smorto told Roadman that she would investigate the situation, instructed Roadman not to discuss the matters with anyone, and changed the weekend work schedule so that Roadman and Lewis would not be working together. (*Id.* ¶¶ 25-27.)

Approximately one week after speaking with Smorto regarding the alleged harassment, Smorto called Roadman into a meeting with Smorto and Matt Gost ("Gost"), a human resources employee. (*Id.* ¶ 28.) At this meeting, Smorto and Gost told Roadman that they had "investigated her complaints with Mr. Lewis, exclusively" and that Lewis had denied her accusations. (*Id.* ¶¶ 29-30.) Roadman then informed Smorto and Gost that she could not work with Lewis, requested that she not be scheduled with Lewis, and advised them that she had received inappropriate text messages from Lewis. (*Id.* ¶¶ 31-32.)

After this meeting, Roadman also discussed the matter with Barb Foster ("Foster") — whose position, if any, with Select is not set forth in the Amended Complaint — and stated that she did not want to work with Lewis. (*Id.* ¶ 33.) Roadman provided copies of the above-referenced text messages to Foster and told her that Jamie Cotterman — presumably the same nurse who told Roadman to "be[] mean" to Lewis so he would not harass her — could corroborate her concerns. (*Id.* ¶¶ 34-35.) The Complaint alleges that Select was aware of Roadman's concerns regarding Lewis because, on several occasions, Roadman called off work when she was scheduled to work with Lewis and still received pay. (*Id.* ¶ 36.)

Roadman had an additional meeting with Human Resources, during which she was informed of the effort to schedule her and Lewis for different shifts, but that Human Resources could not "guarantee" that she and Lewis would not be scheduled together. (*Id.* ¶¶ 37-38.) At this second meeting, Human Resources "threatened the Plaintiff that if either her [sic] or Mr. Lewis said anything else or filed a complaint either one would be fired." (*Id.* ¶ 39.)

The Amended Complaint alleges that this threat made it intolerable for Roadman to continue her employment because she believed that she was being "shunned into silence" and

that she "could have been victimized later by Mr. Lewis or his friends." (*Id.* ¶ 40.) At no time did Human Resources discuss or offer Roadman the opportunity to transfer to a different Select facility. (*Id.* ¶ 41.) Roadman resigned on August 26, 2016.[2] (*Id.* ¶ 42.)

### III. Procedural History

Following this Court's disposition of Defendants' two motions to dismiss, the remaining claims in this case are (1) a hostile work environment claim under Title VII of the Civil Rights Act of 1964 against Select, (2) a "negligence/negligent supervision" claim against Select, and (3) a battery claim against Lewis. *See Roadman*, 2018 WL 557922, at *6. By Memorandum Opinion and Order of January 23, 2018, this Court dismissed all claims for constructive discharge with prejudice. *Id.*

Roadman filed a Motion to Compel Discovery on June 1, 2018. (ECF No. 45.) Defendants filed their Response on June 8, 2018. (ECF No. 46.) This Court held an oral argument on July 26, 2018. (ECF Nos. 52, 53.) The Court subsequently denied Plaintiff's Motion to Compel Discovery. *See Roadman v. Select Specialty Hosp.*, Case No. 3:16-cv-246, 2018 WL 3621017, at *6 (W.D. Pa. July 30, 2018) (Gibson, J.). The Court explained that some of Plaintiff's discovery requests, such as her requests for Lewis's personnel file and text messages from Lewis's phone, had been resolved by the parties prior to oral argument. *See id.* at *4. Other requests, such as those for inappropriate emails and "misogynic [sic] or pornographic material," were rejected by the Court as "aimless 'fishing expedition[s].'" *Id.* at *5.

---

[2] As pointed out by Defendants (ECF No. 33 at 5), the date of April 26, 2016 provided in the Amended Complaint appears to be a typographical error and should read August 26, 2015.

-5-

Now, Roadman has again brought a discovery dispute before this Court. This time, Roadman seeks to extend the time for completion of discovery so that she can take additional depositions and request production of certain documents. (ECF No. 55 ¶¶ 4-5.) Specifically, in her Motion, Roadman requests that discovery be extended so she can take the depositions of the following individuals: (1) "Peachy"; (2) Robert Collins ("Collins");[3] (3) an unnamed Chief Security Officer; (4) an unnamed Chief Compliance Officer;[4] (5) Gost;[5] and (6) "up to three other unnamed female nurses identified in the Smorto and Cotterman depositions." (*Id.* ¶ 4.) Furthermore, Roadman desires to request the following documents: (1) documents related to Smorto's resignation; (2) records memorializing Roadman's "medication scans," (3) a list of the parties interviewed during Smorto's investigation of Roadman's complaints; (4) copies of training films shown to employees and supervisors, along with attendance and comprehension test records; (5) Lewis's and Roadman's texting records; (6) Lewis's employment application and job assignments after employment, his background check, and his résumé; and (9) "a copy of the report or security discussion following the robbery mentioned in the October 31, 2018 Blake deposition." (*Id.* ¶ 5.) Roadman explains that the requested discovery was not completed by the discovery deadline because, "as an outcome of completing the three depositions referenced at oral argument[,] additional parties were identified requiring deposition and added documents were identified as

---

[3] At oral argument, Roadman's counsel expanded this request to depose Collins, indicating that Roadman seeks to depose six of Lewis's friends, including Collins.

[4] Roadman's Motion is unclear regarding the Chief Compliance Officer. The Motion indicates that Roadman seeks to depose "Chief Compliance Officer, Matt Gos[t]," (ECF No. 55 ¶ 4), which seems to mean that Gost is the Chief Compliance Officer. However, Defendants address "Chief Compliance Officer" and "Matt Gost" as two different individuals, and in the Amended Complaint, Gost is identified as a human resources employee. The Court will thus address them separately.

[5] Roadman's Motion misspelled Gost's name as "Matt Goss." (ECF No. 55 ¶ 4.) The Court will use the appropriate spelling in this Motion.

essential to discovery." (*Id.* ¶ 3.) Roadman requests an additional 90 days to complete this discovery. (*Id.* ¶ 7.)

Defendants responded to the Motion on November 9, 2018, arguing that Roadman "misrepresent[s] a need for 'essential' discovery regarding various matters, most of which were within Plaintiff's knowledge long before the currently scheduled close of discovery." (ECF No. 56 at 1.) Defendants discuss each discovery request in turn, arguing that Roadman knew or should have known of the need for discovery on particular people or subjects well before the November 2, 2018 discovery deadline.

On December 6, 2018, the Court held oral argument on Roadman's Motion. (ECF No. 58.) The Motion is now ripe for disposition.

## IV. Legal Standard

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order, such as the order scheduling the close of discovery for November 2, 2018 in this case, *Roadman*, 2018 WL 3621017, at *6, "may be modified *only* for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). In the Rule 16(b)(4) context, "good cause" looks to the diligence of the party seeking modification of the scheduling order. *See Hadeed v. Advanced Vascular Resources of Johnstown*, Case No. 3:15-cv-22, 2017 WL 4286343, at *2 (W.D. Pa. Sept. 26, 2017) (citing *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 119 (W.D. Pa. 2010)). The moving party has the burden of demonstrating "good cause" under Rule 16(b)(4). *Id.* (citing *Graham*, 271 F.R.D. at 119).

## V. Discussion

### A. Depositions

Roadman seeks to reopen discovery in order to depose various individuals. However, she has not met her burden of establishing the good cause necessary to modify the current discovery deadline.

#### 1. "Peachy"

Roadman first requests to reopen discovery to depose "Peachy." (ECF No. 55 ¶ 4.) Defendants assert that Roadman herself testified regarding Peachy's knowledge of her claims at her deposition in April 2018. (ECF No. 56 at 2.) Defendants also claim that Lewis then fully identified Peachy in his deposition on September 20, 2018, but that Roadman did not thereafter seek to schedule a timely deposition of Peachy. (*Id.*) Roadman did not contest any of these points at oral argument. The Court thus finds that Roadman did not exercise diligence in seeking to depose Peachy, so Roadman's request to reopen discovery to depose Peachy is denied.[6]

#### 2. Robert Collins and Lewis's friends

In her Motion, Roadman requests that discovery be extended so she can depose Collins. (ECF No. 55 ¶ 4.) At oral argument, Roadman expanded this request, indicating that she would like to depose six of Lewis's close friends, one of whom is Collins. The other friends identified by Roadman include Ken, Gerald, Brittany, Jenna, and one additional individual whose name the Court did not hear. Roadman wants to depose these friends regarding what Lewis said to them about Roadman's allegations, as well as whether Smorto asked them about allegations against

---

[6] To the extent "Peachy" is one of Lewis's friends that Roadman named at oral argument, the request to reopen discovery is also denied, as discussed *infra*.

-8-

Lewis. Roadman allegedly did not learn of these friends until the depositions of Lewis and Cotterman, which took place on September 20, 2018 and October 23, 2018, respectively.

Upon further questioning by the Court, Roadman's counsel explained that he suspects the friends knew of the facts underlying this lawsuit through Lewis, but acknowledged that he does not know whether they knew or talked to Lewis about the matter.

In response, Defendants argued that "there is no basis in the discovery conducted to date that [Collins] has any knowledge relevant to Plaintiff's claims." (ECF No. 56 at 2.) Defendants asserted that Roadman's request to depose Collins and the other friends is speculative.

The Court agrees with Defendants. As the Court explained in its July 30, 2018 Memorandum Opinion on Roadman's Motion to Compel Discovery, *see Roadman*, 2018 WL 3621017, at *5, this Court does not permit discovery based on pure speculation—"aimless 'fishing expedition[s]'" are not appropriate during discovery. *Id.* In her Motion and at oral argument, Roadman failed to articulate some basis for the supposition that Lewis's friends knew about the incidents with Roadman—Roadman simply argues that the individuals were Lewis's close friends and he thus likely spoke to them regarding Roadman. This train of thought is not enough to warrant reopening discovery.

Moreover, if Roadman wished to know with whom Lewis discussed the incidents with Roadman, Roadman could have discussed this with Lewis at his deposition in September 2018 and thereafter deposed relevant individuals before the close of discovery. Therefore, the Court declines to reopen discovery to allow Roadman to depose Collins and Lewis's other friends, as Roadman has not established the good cause necessary to modify the Court's scheduling order.

### 3. Chief Security Officer and Chief Compliance Officer

Third, in Roadman's Motion, she requests to extend the discovery deadline in order to depose Select's "Chief Security Officer" and "Chief Compliance Officer." (ECF No. 55 ¶ 4.) In response, Defendants explain that Select has no such employees. (ECF No. 56 at 4.) Furthermore, to the extent Roadman is referring to individuals who manage or monitor the surveillance cameras in Select's facilities, Defendants assert that Roadman knew as of the filing of Defendants' Answer on February 6, 2018, that Select's surveillance cameras are owned by Conemaugh Hospital. (*Id.*) Defendants thus argue that Roadman's "failure to pursue further information involving the cameras via the appropriate entity in the 9 months that have elapsed since Defendants' Answer was filed does not justify an extension of discovery." (*Id.*)

At oral argument, Roadman did not address Defendants' arguments. Moreover, Roadman did not explicitly reference a "Chief Security Officer" or "Chief Compliance Officer." Roadman instead discussed a "facilities manager" whose job involves security and compliance. Roadman indicated that she wishes to depose the facilities manager because it goes to Select's negligence.

The Court takes Roadman's discussion of a "facilities manager" to refer to Roadman's desire to depose the "Chief Security Officer" and "Chief Compliance Officer" referenced in Roadman's Motion (ECF No. 55 ¶ 4).[7] Roadman indicated at oral argument that the existence of the facilities manager did not come up until the Kelly Blake ("Blake") deposition on October 30, 2018. However, Defendants correctly pointed out that their Answer to Roadman's Amended

---

[7] To the extent these individuals are different, the Court still concludes that Roadman failed to establish good cause to reopen discovery to depose the "facilities manager," "Chief Security Officer," and "Chief Compliance Officer."

Complaint explained that Select's surveillance cameras are owned and operated by Conemaugh Hospital and that Roadman was aware of this fact since February 6, 2018. (ECF No. 41 ¶ 56.) Furthermore, Roadman knew since at least October 20, 2017, the date of the filing of her Amended Complaint, that the surveillance cameras were important to her case. (*See* ECF No. 30 ¶ 56.) Therefore, Roadman should have pursued discovery of information relating to the surveillance cameras and security well before the November 2, 2018 discovery deadline, regardless of whether Roadman knew the exact title of the individual handling Select's security. The Court will not extend the discovery deadline based on information Roadman should have investigated prior to the close of discovery.

### 4. Matt Gost

At oral argument, Roadman indicated that she seeks to depose Gost in order to ask whether Lewis was specifically questioned about assaulting Roadman. However, Roadman's counsel admitted that he knew about Gost's relevance prior to the close of discovery. In fact, in Roadman's Amended Complaint, she discusses Gost's involvement in this case. (ECF No. 30 ¶ 28.) Specifically, Roadman alleges that after reporting Lewis's harassment to Smorto, she met with Smorto and Gost, who told her that they investigated her complaints with Lewis. (*Id.* ¶¶ 28-29.) Furthermore, in this Court's Memorandum Opinion of July 30, 2018, *see Roadman*, 2018 WL 3621017, the Court mentioned Gost and allegations related to him, *id.* at *2. The Court thus finds that Roadman has not established good cause to extend the discovery deadline in order to depose Gost.

### 5. Unnamed Female Nurses

In Roadman's Motion, she indicated that she seeks to depose "up to three unnamed female nurses identified in the Smorto and Cotterman depositions." (ECF No. 56 ¶ 4.) However, at oral argument, Roadman's counsel explained that he learned in the *Blake* deposition that Smorto had interviewed other nurses regarding Lewis's misconduct.[8] Regardless of whether Roadman learned of these nurses in the Blake, Smorto, or Cotterman depositions, Roadman has failed to establish good cause to extend discovery to depose the nurses.

According to Defendants, the Smorto deposition took place in early September 2018, so Roadman could have sought to depose any individuals referenced during that deposition before November 2, 2018. Furthermore, even if Roadman did learn of these nurses in the more recent Blake and Cotterman depositions, Defendants assert that they identified all parties interviewed by Smorto in their Initial Disclosures served in July 2017. (ECF No. 56 at 3.) Moreover, Defendants explain that in March 2018, Defendants produced Select's complete records of the investigation conducted regarding Roadman's complaint against Lewis, including summaries of all interviews that were conducted. (*Id.*) Defendants reiterated this explanation at oral argument, and Roadman did not contest these assertions. Therefore, the Court concludes that Roadman knew well before the close of discovery of the existence of various individuals interviewed by Smorto in her investigation. Roadman's failure to depose those individuals prior to the close of discovery is not cause to extend the discovery deadline.

---

[8] The Court is assuming that the nurses referenced at oral argument are the same nurses Roadman addresses in her Motion, although this is less than clear. If, at oral argument, the nurses Roadman referenced were Lewis's friends, those individuals were discussed above.

-12-

Furthermore, in Roadman's Amended Complaint, she makes numerous allegations relating to Select's investigation of her complaint against Lewis. (ECF No. 30 ¶¶ 22-39.) To the extent Defendants did not produce information regarding this investigation that would have given Roadman knowledge of the individuals interviewed by Smorto, Roadman should have requested it well before the close of discovery, as it clearly formed part of the basis for Roadman's claims.

Thus, the Court finds that Roadman failed to establish good cause to extend the discovery deadline to enable her to depose the unnamed nurses.

### B. Documents

Roadman has also failed to establish good cause to reopen discovery to enable her to request certain documents from Defendants.

#### 1. Smorto's Resignation

First, Roadman seeks to reopen discovery to request documents related to Smorto's resignation from Select. (ECF No. 55 ¶ 5.) However, Roadman never explained why she could not have requested these documents sooner, particularly considering the fact that Smorto discussed her resignation at her deposition on September 6, 2018. Furthermore, in order to be discoverable, the documents must be relevant, Fed R. Civ. P. 26(b), and there is no indication that documents related to Smorto's resignation, which Defendants claim took place three years after the incidents at issue in this case, would be relevant to Roadman's claims. Therefore, the Court will not reopen discovery to allow Roadman to request documents related to Smorto's resignation.

### 2. Roadman's "Medication Scans"

Second, Roadman seeks records memorializing her "medication scans" (ECF No. 55 ¶ 5), which apparently refers to records indicating when she accessed medicine storage rooms on Select's premises. Roadman fails to offer an explanation as to why she did not seek these records during the discovery period, and Defendants claim that Roadman testified at her deposition in April 2018 regarding the medicine room login procedures and her belief that Select would have records of her logins. Roadman's counsel thus should have requested such records well before the close of discovery—his lack of diligence is not "good cause" that warrants reopening discovery.

### 3. Parties Interviewed by Smorto

Third, Roadman desires to obtain a "list of the parties interviewed by Danielle Smorto's investigation of the triggering incident." (*Id.*) However, Defendants explain that in March 2018, Defendants produced Select's complete records of the investigation conducted regarding Roadman's complaint against Lewis, including summaries of all interviews that were conducted. (ECF No. 56 at 3.) Roadman has not provided this Court with any reason to believe that Defendants did not actually produce these records. Moreover, in Roadman's Amended Complaint, she makes numerous allegations regarding Select's investigation of Roadman's complaint against Lewis. (ECF No. 30 ¶¶ 22-39.) Therefore, to the extent Defendants did not produce information regarding this investigation, Roadman should have requested it well before the close of discovery, as it clearly formed part of the basis for Roadman's claims. The Court thus declines to reopen discovery on this basis.

### 4. Training Films and Related Records

Next, Roadman requests that the Court reopen discovery so that she can obtain "a copy of the training film reported in the . . . Blake deposition with attendance and comprehension test records," as well as "the supervisor's training film reported in the . . . Blake deposition with attendance and comprehension test records." (ECF No. 55 ¶ 5.) At oral argument, Roadman's counsel explained that in the Blake deposition, he learned that Select's employees watch a video and take a test on sexual harassment. There is a separate video for supervisors. After Defendants argued that Roadman should have requested such videos earlier based on the fact that this is a sexual harassment case, Roadman's counsel explained that he did not request the videos and records earlier because he does not have much experience with these types of cases. The Court finds this excuse to be insufficient. In a case with claims for hostile work environment and negligent supervision, any potential sexual harassment training employees and supervisors received would have clearly been relevant and discoverable from the inception of the lawsuit. The Court will not reopen discovery at this late hour to allow for such discovery.

### 5. Text Records

Roadman also seeks to obtain "a true and correct complete copy of Mr. Lewis's texting records exchanged with Ms. Roadman, along with Ms. Roadman's for the Defendants." (ECF No. 55 at 2.) Roadman's counsel indicated at oral argument that he received Lewis's phone records from defense counsel and that his request to reopen discovery to request text messages was thus moot. Further, the Court already addressed text messages between Roadman and Lewis in its July 2018 Memorandum Opinion, in which the Court concluded that "to any extent Roadman may still believe Defendants' production of the text message[s] is incomplete, . . . Defendants have

fully responded to Roadman's request for text messages." *Roadman*, 2018 WL 3621017, at *4. Because Roadman therefore clearly knew about potentially relevant text messages well before the close of discovery, the Court will not reopen discovery on this basis.

### 6. Lewis's Employment Application, Background Check, and Resume

Roadman seeks to reopen discovery in order to request numerous documents relating to Lewis's employment at Select, including his employment application, his background check, and his résumé. (ECF No. 55 ¶ 5.) However, this Court already decided that "Defendants have produced all of Lewis's 'personnel file' documents within the scope of discovery." *Roadman*, 2018 WL 3621017, at *4. Furthermore, at oral argument, Roadman's counsel acknowledged that issues with regard to the personnel file were discussed at the last oral argument in this case, which took place in July 2018. Roadman has not explained why she thinks her current request regarding the personnel file documents was not resolved by the Court's prior opinion. In addition, if the request was not previously resolved, Roadman has not articulated good cause to reopen discovery to request these documents—Roadman clearly knew about the personnel file issues for at least a few months, and there is no reason to allow her to request those documents now, after discovery has closed.

### 7. Robbery

Finally, Roadman's counsel seeks "a copy of the report or security discussion following the robbery mentioned in the [Blake] deposition." (ECF No. 55 ¶ 5.) At oral argument, Roadman's counsel explained that a robbery occurred before Roadman began working for Select, and that Roadman wanted to know what was done after the robbery and whether Defendant complied with its own security procedures. Roadman's counsel indicated that he did not know

-16-

of the robbery until the Blake deposition. In response, Defendants explained that the robbery was not on Select's premises and that any video of the incident is not owned by Select.

In order for information to be discoverable, it must be relevant. *See* Fed. R. Civ. P. 26(b). Here, Roadman has failed to convince the Court that any material related to a robbery at knife point *before* Roadman's alleged assault and *outside* Select's premises would be relevant to Roadman's hostile work environment, negligent supervision, and battery claims. Thus, the Court will not reopen discovery to allow Roadman to seek this information.

## VI. Conclusion

For the reasons stated above, Plaintiff's Motion for Extension of Time (ECF No. 55) will be **DENIED**. Roadman has failed to establish the good cause necessary to modify this Court's scheduling order and to reopen discovery.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA ROADMAN, | ) | Case No. 3:16-cv-246 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| SELECT SPECIALTY HOSPITAL and | ) | |
| RONALD LEWIS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

NOW, this 12th day of December, 2018, for the reasons set forth in the accompanying Memorandum Opinion, Plaintiff's Motion for Extension of Time (ECF No. 55) is **DENIED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE