IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DONNA ROADMAN, | ) | Case No. 3:16-cv-246 |
| --- | --- | --- |
| | ) | |
| | ) | JUDGE KIM R. GIBSON |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SELECT SPECIALTY HOSPITAL and | ) | |
| RONALD LEWIS, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. Introduction

Pending before the Court is Plaintiff's Motion for Reconsideration. (ECF No. 63.) The Motion is fully briefed (ECF Nos. 64, 66) and is ripe for disposition.

This case arises from Plaintiff Donna Roadman's ("Roadman") allegations that Defendant Ronald Lewis ("Lewis") sexually harassed her at her workplace, Defendant Select Specialty Hospital ("Select") (collectively, "Defendants"). *See Roadman v. Select Specialty Hosp.*, Case No. 3:16-cv-246, 2018 WL 557922, at *1 (W.D. Pa. Jan. 23, 2018) (Gibson, J.); *Roadman v. Select Specialty Hosp.*, Case No. 3:16-cv-246, 2017 WL 4236581 (W.D. Pa. Sept. 22, 2017) (Gibson, J.). Roadman asks this Court to reconsider portions of its December 12, 2019 Memorandum Opinion and Order, *Roadman v. Select Specialty Hosp.*, Case No. 3:16-cv-246, 2018 WL 6524005 (W.D. Pa. Dec. 12, 2018), denying Roadman's Motion for Extension of Time (ECF No. 55). Because Roadman has failed to meet the standard for reconsideration of an interlocutory order, Plaintiff's Motion for Reconsideration (ECF No. 63) is **DENIED**.

1

## II. Factual Background[1]

Defendant Select, a specialty hospital offering rehabilitative care and long-term acute care, hired Roadman as a registered nurse to work at its Johnstown, Pennsylvania location on July 7, 2015. (ECF No. 30 ¶¶ 6-8.) During the first week of her employment, Roadman had orientation. (*Id.* ¶ 10.) During the second week of her employment, Roadman was introduced to Lewis, a registered nurse who had worked for Select for several years. (*Id.* ¶¶ 11-12.) Select assigned Lewis to train Roadman for her new position. (*Id.* ¶ 13.)

Before Roadman began her training, a number of other employees made comments to Roadman concerning Lewis's behavior. (*Id.* ¶ 14.) These comments included: (1) a nurse named Jamie telling Roadman to "be careful" around Lewis because "he hit on her," (2) Jamie suggesting "being mean" to Lewis so that he would not harass her, (3) a respiratory therapist informing Roadman that Lewis liked her and wanted to date her, and (4) another respiratory therapist joking in front of Lewis and Roadman that Roadman would never go out with Lewis, therein "implying knowledge" of Lewis's intentions. (*Id.* ¶ 14.)

Thereafter, the Amended Complaint alleges that, with approval and knowledge of Select, Lewis created and maintained a hostile work environment for Roadman because of her gender by engaging in the following behavior: (1) demanding dates, intimating that Roadman should sleep with him, touching Roadman's buttocks, and touching Roadman's cheeks; (2) calling Roadman "babe" and "hun" and commenting on Roadman's appearance by stating that

---

[1] The Court draws this factual background from its Memorandum Opinion and Order of January 23, 2018 that decided Defendants' Motion to Dismiss the Amended Complaint in Part. *See Roadman*, 2018 WL 557922, at *1-2. Thus, this factual background is derived from the allegations in Plaintiff's Amended Complaint. (*See* ECF No. 30.)

2

Roadman was "cute," "pretty," and "sexy"; (3) texting Roadman on her cell phone number that he acquired for purposes of orientation and calling Roadman "babe" or "hun" in those messages; (4) scolding, degrading, and belittling Roadman concerning her nursing skills and job performance when Roadman refused his unwelcome advances; (5) grabbing Roadman by the waist and grinding his crotch into her buttocks to the point where Roadman "felt Mr. Lewis's erect penis against her" on one occasion in the medicine room; and (6) "by other such actions too numerous to list in their entirety." (*Id.* ¶ 15.) Roadman also alleges that Lewis's references to Roadman as "babe" and "hun" and the touching of Roadman's buttocks and cheeks "regularly occurred in front of staff and were open and notorious to the other employees of Select." (*Id.* ¶ 16.)

Roadman reported this behavior to her scheduler, Renee Lightcap ("Lightcap") and requested to be trained by someone other than Lewis. (*Id.* ¶ 17.) Lightcap complied, and Ronald Lindros ("Lindros") completed Roadman's remaining week of orientation. (*Id.* ¶ 18.) Roadman was then scheduled to work at the same time as Lewis for several days. (*Id.* ¶ 19.) Roadman called off work on these days to avoid working with Lewis. (*Id.* ¶ 20.)

After returning from vacation, Roadman's supervisor, Danielle Smorto ("Smorto"), telephoned Roadman and "asked her what happened." (*Id.* ¶ 21.) Roadman reported the alleged harassment to Smorto by telephone and sent a follow-up e-mail. (*Id.* ¶¶ 22-23.) Smorto told Roadman that she would investigate the situation, instructed Roadman not to discuss the matters with anyone, and changed the weekend work schedule so that Roadman and Lewis would not be working together. (*Id.* ¶¶ 25-27.)

3

Approximately one week after speaking with Smorto regarding the alleged harassment, Smorto called Roadman into a meeting with Smorto and Matt Gost ("Gost"), a human resources employee. (*Id.* ¶ 28.) At this meeting, Smorto and Gost told Roadman that they had "investigated her complaints with Mr. Lewis, exclusively" and that Lewis had denied her accusations. (*Id.* ¶¶ 29-30.) Roadman then informed Smorto and Gost that she could not work with Lewis, requested that she not be scheduled with Lewis, and advised them that she had received inappropriate text messages from Lewis. (*Id.* ¶¶ 31-32.)

After this meeting, Roadman also discussed the matter with Barb Foster ("Foster")—whose position, if any, with Select is not set forth in the Amended Complaint—and stated that she did not want to work with Lewis. (*Id.* ¶ 33.) Roadman provided copies of the above-referenced text messages to Foster and told her that Jamie Cotterman—presumably the same nurse who told Roadman to "be[] mean" to Lewis so he would not harass her—could corroborate her concerns. (*Id.* ¶¶ 34-35.) The Amended Complaint alleges that Select was aware of Roadman's concerns regarding Lewis because, on several occasions, Roadman called off work when she was scheduled to work with Lewis and still received pay. (*Id.* ¶ 36.)

Roadman had an additional meeting with Human Resources, during which she was informed of the effort to schedule her and Lewis for different shifts, but that Human Resources could not "guarantee" that she and Lewis would not be scheduled together. (*Id.* ¶¶ 37-38.) At this second meeting, Human Resources "threatened the Plaintiff that if either her [sic] or Mr. Lewis said anything else or filed a complaint either one would be fired." (*Id.* ¶ 39.)

The Amended Complaint alleges that this threat made it intolerable for Roadman to continue her employment because she believed that she was being "shunned into silence" and

that she "could have been victimized later by Mr. Lewis or his friends." (*Id.* ¶ 40.) At no time did Human Resources discuss or offer Roadman the opportunity to transfer to a different Select facility. (*Id.* ¶ 41.) Roadman resigned on August 26, 2016.[2] (*Id.* ¶ 42.)

## III. Procedural History

Following this Court's disposition of Defendants' two motions to dismiss, the remaining claims in this case are (1) a hostile work environment claim under Title VII of the Civil Rights Act of 1964 against Select, (2) a "negligence/negligent supervision" claim against Select, and (3) a battery claim against Lewis. *See Roadman*, 2018 WL 557922, at *6. By Memorandum Opinion and Order of January 23, 2018, this Court dismissed all claims for constructive discharge with prejudice. *Id.*

Roadman filed a Motion to Compel Discovery on June 1, 2018. (ECF No. 45.) Defendants filed their Response on June 8, 2018. (ECF No. 46.) This Court held an oral argument on July 26, 2018. (ECF Nos. 52, 53.) The Court subsequently denied Plaintiff's Motion to Compel Discovery. *See Roadman v. Select Specialty Hosp.*, Case No. 3:16-cv-246, 2018 WL 3621017, at *6 (W.D. Pa. July 30, 2018) (Gibson, J.). The Court explained that some of Roadman's discovery requests, such as her requests for Lewis's personnel file and text messages from Lewis's phone, had been resolved by the parties prior to oral argument. *See id.* at *4. Other requests, such as those for inappropriate emails and "misogynic [sic] or pornographic material," were rejected by the Court as "aimless 'fishing expedition[s].'" *Id.* at *5.

---

[2] As pointed out by Defendants (ECF No. 33 at 5), the date of April 26, 2016 provided in the Amended Complaint appears to be a typographical error and should read August 26, 2015.

5

Then, Roadman brought another discovery dispute before this Court. Roadman sought to extend the time for completion of discovery so that she could take additional depositions and request production of certain documents. (ECF No. 55 ¶¶ 4-5.) Roadman sought to extend discovery so as to request production of, *inter alia*, (1) Select's employee and supervisor training films and records and (2) a copy of a report describing a robbery mentioned in the deposition of one of Select's employees. The Court denied Roadman's Motion for Extension of Time, *see Roadman*, 2018 WL 6524005, and Roadman seeks reconsideration of this ruling with regard to the training materials and the robbery report.

## IV. Legal Standard[3]

"The Court has the inherent power to reconsider interlocutory orders such as discovery orders." *Fears v. Wetzel*, Civil Action No. 05-cv-1421, 2015 WL 5286521, at *1 (W.D. Pa. Sept. 9, 2015) (Gibson, J.).

However, "[a] motion for reconsideration is a limited vehicle used [only] 'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Jackson v. City of Phila.*, 535 F. App'x 64, 69 (3d Cir. 2013) (quoting *Max's Seafood Café ex rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). "Motions for reconsideration are not designed to provide litigants with a 'second bite at the apple.'" *Cole's Wexford Hotel, Inc. v. UPMC & Highmark Inc.*, No. CV 10-1609, 2017 WL 432947, at *2 (W.D. Pa. Feb. 1, 2017) (quoting *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995)). "A motion for reconsideration is not to be used to relitigate, or 'rehash,' issues the court already decided, or to ask a district court to rethink a decision it, rightly

---

[3] Rule 60(b) does not apply to this case, as Rule 60(b) only provides relief for a *final* judgment, order, or proceeding. *See* Fed. R. Civ. P. 60(b).

6

or wrongly, already made." *Id.* (citing *Williams v. City of Pittsburgh*, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998)). "By reason of the interest in finality, at least at the district court level, motions for reconsideration should be sparingly granted." *Id.* at *1.

Roadman is only entitled to reconsideration if she establishes that relief is justified based on (1) an intervening change in the law; (2) the availability of new evidence; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848–49 (3d Cir. 2014) (quoting *Max's Seafood Café*, 176 F.3d at 677) (internal quotation marks omitted). Roadman appears to base her motion on the need to correct a clear error of fact with regard to the robbery and to prevent manifest injustice with regard to the training materials.

V. **Discussion**

a. **The Court will not reconsider its decision on the training materials.**

In its Memorandum Opinion and Order denying Roadman's Motion for Extension of Time, the Court refused Roadman's request to extend discovery so Roadman could seek production of the training materials because Roadman did not offer a sufficient explanation for her failure to request the training materials before discovery closed. *See Roadman*, 2018 WL 6524005, at *7.

Roadman now argues that the Court should reconsider its ruling regarding the training materials because Defendants had an affirmative duty to disclose the existence of the training materials but failed to do so. (ECF No. 64 at 3.) Roadman does not identify an intervening change of law, new evidence, or a clear error of law or fact that justifies reconsideration, and thus this Court presumes that Roadman is basing her Motion on the need to prevent manifest injustice.

7

(*See id.* at 4 ("It is simply not fair for the Defendant to fail to provide this information and thereafter be able to argue it complied with its own policies and procedures.").)

Roadman states that pursuant to their Federal Rule of Civil Procedure 26(a) disclosure obligations, Defendants have a duty to provide copies or descriptions of all materials in their possession that support their defense. (*Id.*) Because the training videos would support Defendants' defense, Roadman argues that Defendants had a duty to disclose the existence of the training materials.

Moreover, during discovery, Roadman requested "all documents concerning or related to policies or procedures when an employee makes a complaint of sexual harassment." (*Id.*) Defendants did not produce the training tapes in response to this request, which Roadman claims "rises to the level of discovery misconduct" that is "grounds for relief." (*Id.* at 4.)

In response, Defendants argue that they were not required to disclose the existence of the training materials as part of their Rule 26(a) disclosure obligations because Defendants have no affirmative duty to disclose all evidence that may be relevant to the issues in the case. (ECF No. 66 at 5.) Instead, Defendants only have to disclose evidence that Defendants may use to support their claims or defenses. (*Id.*) Because Defendants are not planning to use the training materials to support their defense, they had no obligation to disclose those materials. (*Id.*) Defendants also explain that they did not produce the training materials in response to Roadman's aforementioned discovery request because the "request clearly seeks the policies and procedures that Select (i.e., management) follows upon receiving a harassment complaint." (*Id.* at 6.)

As a preliminary matter, the Court notes that Roadman failed to raise the aforementioned arguments in her original Motion for Extension of Time or at oral argument on that Motion,

8

which belies Roadman's assertion that reconsideration is necessary. *See Tedford v. Beard*, Civil Action No. 09-409, 2014 WL 4828873, at *16 (W.D. Pa. Sept. 29, 2014) (Gibson, J.) ("[A] movant who fails in his first attempt to persuade a court to adopt his position may not use a subsequent motion for reconsideration . . . to raise new arguments that he did not advance when the matter was being decided in the first instance."); *Massie v. U.S. Dep't of Housing and Urban Dev.*, Civil Action No. 06-1004, 2008 WL 4890174, at *1 (W.D. Pa. Oct. 31, 2008) ("A motion for reconsideration may not be used to present a new legal theory for the first time or to raise new arguments the could have been made in support of the original motion.").

Moreover, the Court disagrees with Roadman's interpretation of Rule 26(a). According to this Rule, a party must provide to opposing parties "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). The language of this Rule is clear—Defendants only had to produce the training videos if they were considering using the videos and materials to support their defense. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) (requiring production of the materials that a party "*may use* to support its claims or defenses" (emphasis added)). Roadman does not assert in her Motion or corresponding brief that Defendants were considering using or have used the training materials in support of their defense. Instead, Roadman relies on the erroneous belief that Defendants must automatically disclose material if the material could potentially support their defense. (ECF No. 64 at 3.) This interpretation is unsustainable in the face of the plain language of the Rule.

9

Because Defendants had no obligation to disclose the training materials as part of their Initial Disclosures, Roadman was only entitled to the production of the training materials if she requested those materials from Defendants before the close of discovery. Roadman asserts that she made such a request with the following interrogatory: "Please produce all documents concerning or related to policies or procedures when an employee makes a complaint of sexual harassment." (ECF No. 64 at 3; ECF No. 63-4.) However, based on the information provided to the Court,[4] the training materials do not fall within this request. Although the request is less than clear, it appears to seek information on the procedures that are followed *after* a Select employee complains of sexual harassment. The training materials, in contrast, address "types of harassment, what's is [sic] reportable, [and] people you can go to to report." (ECF No. 66-1 at 4, 13.) Thus, the training materials address how employees should identify and report sexual harassment, not the procedures that Select must follow when responding to such reports. By providing Select's policies on sexual harassment complaints in response to Roadman's request, Defendants have complied with their discovery obligations.

Therefore, Roadman has not established grounds for reconsideration of this Court's December 12, 2018 decision denying Roadman's Motion for Extension of Time with regard to the training materials. Granting Roadman's Motion for Reconsideration is not necessary to prevent manifest injustice.

---

[4] The only information provided to the Court as to the exact content of the training materials comes from portions of the deposition of Kelly Blake, Select's CEO, which was attached to Defendants' Response in Opposition to Plaintiff's Motion for Reconsideration. (*See* ECF No. 66-1.)

### b. The Court will not reconsider its decision on the robbery materials.

Next, Roadman seeks reconsideration of the Court's denial of her Motion for Extension of Time with regard to requesting materials on the robbery. She bases this Motion on the need to correct an error of fact.

Roadman explains that the Court based its prior decision on the irrelevance of the robbery on Defendants' assertion at oral argument that the robbery occurred outside Select's premises. (ECF No. 64 at 2.) However, as defense counsel indicated at the Post-Discovery Status Conference held on December 14, 2018, the robbery actually took place on Select's premises. (*See* ECF No. 61.) Roadman argues that this fact should change the Court's analysis regarding the relevance of the robbery. Defendants argue that notwithstanding the new information on the robbery, the robbery is not relevant and thus is not discoverable. (ECF No. 66 at 2.)

The robbery took place two to three years before Roadman began working at Select. (ECF No. 66-1 at 8.) It involved an individual following a Select employee from the elevator and robbing the employee in her office. (*Id.* at 8-9.) The perpetrator was identified based on surveillance camera footage and apprehended by police. (*Id.* at 8.)

Roadman argues that this incident, and any security changes thereafter, are relevant to Roadman's assertion that Select "lacked sufficient security measures in order to protect its employees from assault." (ECF No. 64 at 2.) But Roadman's argument fails to acknowledge the significant differences between the robbery and the facts of this case. Here, Roadman alleges that Lewis grabbed her by the waist and "ground his crotch into the Plaintiff's buttocks to the point where the Plaintiff felt Mr. Lewis's erect penis against her" while they were in Select's medication room. (ECF No. 30 ¶ 15(e).) Roadman claims that Select was negligent in failing to have a camera

11

inside the medication room, which gave Lewis the opportunity to sexually assault Roadman. (*Id.* ¶¶ 55-59.) As Defendants point out, "[n]o evidence has been developed that any prior incident placed Select on notice that providing video surveillance *inside the medication room* was necessary to keeping the premises reasonably safe for employees." (ECF No. 66 at 4.)

Because of the differences between the robbery and Roadman's alleged sexual assault in the medication room, the robbery does not tend to make Select's lack of sufficient security measures with regard to Roadman's assault more or less probable. *See* Fed. R. Evid. 401. The robbery is thus irrelevant. *Id.* The Court will not reconsider its previous ruling on the robbery, as Roadman has still failed to establish the robbery's relevance to the present case.

## VI. Conclusion

For the reasons stated above, Plaintiff's Motion for Reconsideration (ECF No. 63) is **DENIED**. Roadman has failed to meet the high standard for reconsideration of an interlocutory district court decision.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DONNA ROADMAN, | ) | Case No. 3:16-cv-246 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| SELECT SPECIALTY HOSPITAL and RONALD LEWIS, | ) | |
| Defendants. | ) | |

## ORDER

NOW, this _1st_ day of February, 2019, for the reasons set forth in the accompanying Memorandum Opinion, Plaintiff's Motion for Reconsideration (ECF No. 63) is **DENIED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE