IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DONNA ROADMAN, | ) | Case No. 3:16-cv-246 |
| --- | --- | --- |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| SELECT SPECIALTY HOSPITAL and RONALD LEWIS, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I. Introduction

This case arises from Defendant Select Specialty Hospital's ("Select") alleged discrimination against Plaintiff in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") while she worked as a registered nurse ("RN") at Select. Pending before the Court is Defendants' Motion for Partial Summary Judgment. (ECF No. 75.) The Motion is fully briefed (ECF Nos. 78, 81, 82) and ripe for disposition. For the reasons that follow, the Court **GRANTS** Defendants' Motion.

### II. Jurisdiction and Venue

This Court has subject-matter jurisdiction because Plaintiff's Title VII claim arises under federal law. 28 U.S.C. § 1331. This Court has jurisdiction over Plaintiff's state law claims because they form part of the same case or controversy as her federal claim. 28 U.S.C. § 1367. Venue is proper because a substantial part of the events giving rise to Plaintiff's claims occurred in the Western District of Pennsylvania. 28 U.S.C. § 1391(b)(2).

### III. Factual Background

The following facts are undisputed unless otherwise noted.[1]

#### A. Plaintiff Allegedly Experiences Sexual Harassment at Select

Plaintiff was employed by Select as a RN for a period of approximately seven weeks, from July 7, 2015, through August 26, 2015. (ECF No. 76 ¶ 1.) During her second week of employment, on July 13, Plaintiff met Ronald Lewis, another RN employed by Select, who was assigned to conduct a portion of her training and orientation over a period of three weeks. (*Id.* ¶¶ 6–8.)

Plaintiff claims that, during her second and third weeks of training with Mr. Lewis—specifically between July 17 and July 19, 2015—Mr. Lewis: asked her on a date; stated in a text message that they could "have a lot of fun;" grabbed her cheeks; put his arm around her; grazed and patted her buttocks; called her "hon," "sexy," and "dear;" told her she looked "cute" or "pretty;" and directed other innuendos towards her. (*Id.* ¶¶ 9–11.) Plaintiff further claims that, on either July 27, 28, or 29, while she and Mr. Lewis were in one of Select's medication rooms obtaining medication for a patient, Mr. Lewis allegedly grabbed her by the waist and rubbed his crotch against her buttocks. (*Id.* ¶ 12.) Plaintiff did not work with Defendant Lewis again after July 29, 2015, and otherwise had no interaction with him after that date. (*Id.* ¶ 13.)

---

[1] The Court derives these facts solely from Defendants' Statement of Undisputed Material Facts. (ECF No. 76). Plaintiff filed no responsive statement of material facts, which was due on July 1, 2019. (ECF No. 80.) Under the Local Rules of Court of the United States District Court for the Western District of Pennsylvania, "[a]lleged material facts set forth in the moving party's Concise Statement of Material Facts . . . will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56(E); *see also* Practices and Procedures of Judge Kim R. Gibson at 28–29 (same). Accordingly, the Court deems all the facts in Defendants' Statement of Undisputed Material Facts (ECF No. 76) to be admitted by Plaintiff.

## B. Plaintiff's Reports Mr. Lewis's Alleged Conduct to Select

Plaintiff had received Select's anti-harassment policies, and was aware that, if she believed she had experienced sexual harassment, she was to report it to her supervisor, Chief Nursing Officer Danielle Smorto. (*Id.* ¶¶ 19, 22–23). Plaintiff first reported Mr. Lewis's alleged conduct to Staffing Coordinator Renee Lightcap on August 3, 2015. (*Id.* ¶ 14.) Plaintiff spoke to Ms. Lightcap because Ms. Smorto had been away on vacation since July 31, 2015. (*Id.* ¶ 18.) Plaintiff requested that Select assign her a different trainer because Mr. Lewis purportedly made her feel uncomfortable with alleged inappropriate comments and touching. (*Id.* ¶¶ 15–16.) Ms. Lightcap assigned Plaintiff to a different trainer, Ron Lindros, effective immediately. (*Id.* ¶ 17.) Plaintiff did not report the medication room incident to Ms. Lightcap or to any member of management until Ms. Smorto contacted her on August 11, 2015 to follow up on the allegations Plaintiff had conveyed to Ms. Lightcap. (*Id.* ¶¶ 16, 18, 21.)

Ms. Smorto called Plaintiff on August 11, 2015, to obtain further information from Plaintiff regarding Mr. Lewis's alleged conduct. (*Id.* ¶ 26.) Ms. Smorto told Plaintiff that Select would conduct an investigation and asked Plaintiff to submit a written statement of her allegations. (*Id.* ¶ 28.) Plaintiff emailed a statement to Ms. Smorto on August 12, 2015, which Ms. Smorto then forwarded to Human Resources Coordinator Matt Gost, Regional Human Resources Director Barb Foster, and CEO Kelly Blake. (*Id.* ¶¶ 27, 29, 34.) Ms. Smorto and Mr. Gost then met with Mr. Lewis that same day and questioned him regarding the alleged inappropriate conduct. (*Id.* ¶ 39.) Mr. Lewis denied having touched Plaintiff inappropriately, stating that he only had put his arm around her in a non-sexual manner when directing her to the next procedure in her training. (*Id.* ¶ 40.) Ms. Smorto then suspended Mr. Lewis until Select completed its investigation

-3-

of the matter and told Mr. Lewis that he could not have any contact with Plaintiff during the investigation, he was prohibited from retaliating against her, and he was to behave in a respectful and professional manner toward all of his coworkers at all times. (*Id.* ¶¶ 41–43.) Prior to Plaintiff's complaints, Select had never received any prior complaints regarding Mr. Lewis. (*Id.* ¶ 82.) Additionally, Plaintiff did not know of any other female employee who Mr. Lewis had allegedly touched inappropriately or otherwise sexually harassed. (*Id.* ¶ 80.)

### C. Select Interviews Plaintiff and Mr. Lewis

On August 13, 2015, Ms. Smorto and Mr. Gost reached out to Plaintiff and scheduled a meeting with her on August 19 to discuss her complaint about Mr. Lewis. (*Id.* ¶¶ 44–45, 50.) In the interim, Ms. Smorto and Mr. Gost conducted a follow-up meeting with Mr. Lewis, during which they further reviewed Plaintiff's allegations with him, and Mr. Lewis maintained his denial of the allegations. (*Id.* ¶¶ 47–48.) Ms. Smorto and Mr. Gost told Mr. Lewis that he would not be disciplined at that time because the allegations were currently unsubstantiated, but also reminded him that he must behave in a professional manner toward Plaintiff and refrain from any retaliation. (*Id.* ¶ 49.) Ms. Smorto and Mr. Gost interviewed no other employees because Plaintiff was unable to identify anyone who purportedly had any knowledge related to her allegations. (*Id.* ¶ 36.) Had Plaintiff identified any witnesses, Ms. Smorto and Mr. Gost would have interviewed them. (*Id.* ¶ 37.)

Plaintiff met with Ms. Smorto and Mr. Gost on August 19, 2015, to discuss her complaint against Mr. Lewis. (*Id.* ¶ 51.) Plaintiff told Ms. Smorto and Mr. Gost that Mr. Lewis had sent her text messages, screenshots of which she then provided to Select. (*Id.* ¶ 54.) After the August 19 meeting, Plaintiff informed Select that Jamie Cotterman, another RN, had information regarding

Mr. Lewis's alleged conduct. (*Id.* ¶ 55.) Ms. Blake, Ms. Smorto, and Mr. Gost interviewed Ms. Cotterman on August 25, 2015, and she told them that Mr. Lewis may have asked her out when she first began working at Select, but that he did not ask her out again after she declined. (*Id.* ¶¶ 56, 58.) Ms. Cotterman told Ms. Blake that Mr. Lewis never touched her inappropriately, she never saw Mr. Lewis act inappropriately, she never heard anyone complain about him, and she never made any complaints to Select regarding any inappropriate behavior on his part. (*Id.* ¶¶ 59, 62–63.)

After meeting with Ms. Cotterman on August 25, 2015, Ms. Blake, Ms. Smorto, and Mr. Gost interviewed Mr. Lewis for a third time and questioned him about his text messages to Plaintiff. (*Id.* ¶ 64.) Ms. Blake told Mr. Lewis that Select expected complete professionalism from him if he worked with Plaintiff again, told him to not put his arm around other employees, and told him that he was not to retaliate against Plaintiff. (*Id.* ¶¶ 66–68.)

### D. Select Concludes the Investigation and Plaintiff Resigns

After concluding the interviews, Ms. Blake, Ms. Smorto, and Mr. Gost called Plaintiff on August 25 to inform her of the results of the investigation. (*Id.* ¶ 69.) Ms. Blake told Plaintiff that Select would move her to the opposite weekend rotation from Mr. Lewis and would make every effort to schedule them on separate days or separate units. (*Id.* ¶¶ 70–71.) However, Ms. Blake explained to Plaintiff that it would not be possible to guarantee that she and Mr. Lewis would never have to work together, and that they might have to do so in the event of unexpected call-offs by other employees, emergencies, or other situations involving patient needs. (*Id.* ¶¶ 71–74, 78.) Ms. Blake told Plaintiff what Select had discussed with Mr. Lewis and that he agreed to abide by Select's expectations of professionalism. (*Id.* ¶ 75.) Ms. Blake also told Plaintiff that, if Plaintiff

experienced any further problems with Mr. Lewis, Select had an open-door policy under which Plaintiff could bring her concerns to any member of management. (*Id.*)

Plaintiff responded that she was not willing to work with Mr. Lewis ever, and that if she was scheduled to do so, she would call off from work. (*Id.* ¶ 76.) Plaintiff then stated that she was not satisfied with Select's response to her allegations and was looking for other jobs and would only continue working at Select until she found other employment. (*Id.* ¶¶ 77, 79.) The following day, August 26, 2015, Plaintiff emailed her resignation to Ms. Blake. (*Id.* ¶ 79.)

## IV. Procedural Background

On November 18, 2016, Plaintiff filed her Complaint with the Court. (ECF No. 1.) After the Court partially granted Defendants' Partial Motion to Dismiss (ECF No. 28), Plaintiff filed an Amended Complaint on October 20, 2017, asserting: (1) a claim of hostile environment against Select under Title VII (Count I); (2) a state tort claim of negligence/negligent supervision against Select (Count II); and (3) a claim of battery against Mr. Lewis under state law (Count III). (ECF No. 30.) Defendants moved to dismiss the Amended Complaint in part (ECF No. 32) and the Court dismissed Plaintiff's constructive discharge claims as asserted within Counts I and III. (ECF No. 40.) Defendants answered the Amended Complaint on February 6, 2018. (ECF No. 41.)

On March 15, 2019, Defendants moved for partial summary judgment. (ECF No. 75.) Plaintiff responded in opposition to the Motion on August 1, 2019 (ECF No. 81), to which Defendants replied on August 15, 2019. (ECF No. 92.)

## V. Legal Standard

This Court will grant summary judgment "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a); *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine if the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). In deciding a summary judgment motion, this Court "'must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594

(3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue").

VI. Discussion

### A. The Court Grants Defendants' Partial Motion for Summary Judgment as to Plaintiff's Title VII Claim

To establish a Title VII hostile work environment claim against her employer, the plaintiff must prove: (1) the employee suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) respondeat superior liability. *Knabe v. Boury Corp.*, 114 F.3d 407, 410 (3d Cir. 1997). Defendants challenge only the fifth element of the claim, respondeat superior liability. (ECF No. 78 at 7.)

When the alleged harasser is a coworker,[2] an employer is liable only if the plaintiff shows that the employer failed to provide a reasonable avenue for complaint or, alternatively, if the employer knew of, or should have known of, the harassment and failed to take prompt and appropriate remedial action. *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009). Plaintiff concedes that Select took prompt action in response to her complaint. (ECF No. 81 at 2.) Therefore, the only remaining issue is whether Select's response to Plaintiff's complaint was appropriate remedial action.

---

[2] The parties agree that Mr. Lewis was Plaintiff's coworker. (*See* ECF No. 78 at 7; ECF No. 81 at 1.)

-8-

### 1. The Parties' Arguments

Defendants argue that Select's response to Plaintiff's complaint was adequate as a matter of law. (ECF No. 78 at 12.) When Plaintiff reported her discomfort in working with Mr. Lewis to Ms. Lightcap, she immediately reassigned Plaintiff to another trainer for the remainder of her orientation. (*Id.*) Ms. Lightcap conveyed Plaintiff's concerns to Ms. Smorto, Plaintiff's supervisor, and Ms. Smorto promptly contacted Plaintiff on August 11 to discuss the matter. (*Id.*) After speaking with Plaintiff, Ms. Smorto informed Mr. Gost, Ms. Foster, and Ms. Blake of the matter and commenced an investigation. (*Id.*) Ms. Smorto met with Mr. Lewis on August 12 and suspended him pending further investigation of Plaintiff's complaint. (*Id.*) Ms. Smorto told Mr. Lewis that he was required to behave in a respectful and professional manner toward Plaintiff and all coworkers, and that any retaliation was forbidden. (*Id.*) Once Plaintiff identified Ms. Cotterman as an employee who could have knowledge pertinent to Plaintiff's allegations, Select interviewed her. (*Id.*) When Select received copies of text messages between Plaintiff and Mr. Lewis that purportedly supported her allegations, Select again interviewed Mr. Lewis and reminded him of Select's expectation of professionalism. (*Id.*) Select moved Plaintiff and Mr. Lewis to opposite weekend rotations and otherwise scheduled them separately to the extent that it was feasible in light of patient care issues. (*Id.* at 12–13.) Select told Plaintiff that, in the event she experienced any further alleged issues with Mr. Lewis, Select had an open-door policy under which she could bring her concerns to any member of management. (*Id.* at 13.) After she initially conveyed her complaint to Ms. Lightcap on August 3, Plaintiff did not experience any further alleged unwelcome conduct from Mr. Lewis. (*Id.*) Defendants assert that this response was appropriate and adequate to address Plaintiff's complaint. (*Id.*)

Plaintiff responds that Select's actions in response to her complaint were not adequate. (ECF No. 81 at 2.) Plaintiff asserts that for Select's response to be adequate, Select must have separated Plaintiff and Mr. Lewis so they would not be working in close proximity. (*Id.*) Plaintiff asserts that because Mr. Lewis sexually assaulted Plaintiff in an isolated room, the minimum appropriate remedy was total separation of the parties, which Select refused to provide. (*Id.* at 3.) Under Select's proposed remedy, Plaintiff was left vulnerable to additional sexual assault. (*Id.* at 7.)

### 2. Select's Response to Plaintiff's Complaint Was Adequate

A remedial action is adequate as a matter of law if it stops the harassment or is "reasonably calculated" to end the harassment. *Andreoli v. Gates*, 482 F.3d 641, 644 & n.2 (3d Cir. 2007). The remedy need not include discipline to be adequate. *Mufti v. Aarsand & Co.*, 667 F. Supp. 2d 535, 551 (W.D. Pa. 2009) (citing *Knabe*, 114 F.3d at 413). Additionally, the employer's remedy does not need to be adequate from the complainant's perspective. *Knabe*, 114 F.3d at 414. An employee cannot dictate that the employer select a certain remedial action, such as demanding that the alleged harasser be fired or transferred. *Id.*

The Court holds that Select's response to Plaintiff's complaint was reasonably calculated to prevent any further sexual assault. Select immediately reassigned Plaintiff to another trainer after she notified Select of her discomfort. Select then contacted Plaintiff and arranged to meet with her in person to discuss her complaint. Select commenced an investigation and suspended Mr. Lewis. Select attempted to substantiate Plaintiff's claim against Mr. Lewis and when Plaintiff presented new information to Select—identifying Ms. Cotterman and providing the text messages—Select investigated further. Select scheduled Plaintiff and Mr. Lewis separately to the

extent that it was feasible in light of patient care issues. Select told Plaintiff that she could report any further harassment to Select. Mr. Lewis and Plaintiff were separated after Plaintiff first informed Select of the alleged harassment and had no further interactions and there were no further allegations of harassment.

Plaintiff takes issue with the fact that Select could not guarantee that Plaintiff and Mr. Lewis would never work the same shift. Select was not required to make such a guarantee. In *Knabe*, for example, in response to a waitress's complaint that a manager was sexually harassing her, the employer conducted an investigation, interviewed the parties and other witnesses, reminded the alleged harasser of the restaurant's anti-harassment policy and the consequences of violating the policy, and told the plaintiff to contact the restaurant if there was any further harassment. 114 F.3d at 408. At the conclusion of the investigation, the employer told the plaintiff that it could not corroborate her harassment claim and would not reprimand the alleged harasser. *Id.* at 409. The plaintiff insisted that the employer discharge the alleged harasser or transfer him to another restaurant, which the restaurant refused to do. *Id.* The Third Circuit held that the employer's remedial action was adequate because it was reasonably calculated to prevent further harassment and that the adequacy of the response was not dependent on the complainant's requested action. *Id.* at 413–14.

In this case, Select took more remedial steps in response to Plaintiff's complaint than did the employer in *Knabe*. Select responded to Plaintiff's complaint by immediately separating Plaintiff and Mr. Lewis and reassigning her to another trainer, which did not occur in *Knabe*. Since the separation on August 3, Plaintiff did not report nor experience any further harassment from Mr. Lewis. Although Plaintiff wanted a guarantee from Select that she would never have to work

-11-

in proximity with Mr. Lewis, this was a guarantee Select stated it could not make. As a matter of law, Select was not required to make this guarantee. Accordingly, Select's response to Plaintiff's complaint was reasonably calculated to prevent further harassment and is adequate as a matter of law.

### B. The Court Grants Defendants' Partial Motion for Summary Judgment as to Plaintiff's Negligence/Negligent Supervision Claim

#### 1. The Parties' Arguments

Defendants argue that the PHRA preempts Plaintiff's negligence/negligent supervision claim because her claim is based upon the same facts that give rise to her claim for sexual harassment. (ECF No. 78 at 14.) Defendants assert that, in this claim, Plaintiff seeks to hold Select liable for its alleged negligence in failing to prevent Mr. Lewis from allegedly sexually harassing her and in enabling the harassment to occur by allegedly failing to protect Plaintiff from Mr. Lewis. (*Id.* at 15.) These assertions make up a hostile work environment claim under the PHRA, which examines whether an employer knew of, or should have known of, the harassment and failed to take prompt and appropriate remedial action. (*Id.*) Defendants assert that both Plaintiff's hostile work environment claim and negligence/negligent supervision claim are governed by negligence principles. (*Id.* at 16.) By bringing common law tort claims of negligence, Plaintiff is seeking to evade the statutory scheme provided by the PHRA by converting a hostile work environment claim into a common law tort claim. (*Id.*)

Plaintiff provides no response to Defendants' assertions in her brief.

## 2. The PHRA Preempts Plaintiff's Negligence/Negligent Supervision Claim

For acts of employment discrimination, the PHRA "exclude[s] any other action, civil or criminal based on the same grievance of the complainant concerned." 43 Pa. Stat. Ann. § 962(b). This provision of the PHRA "exclude[s] common law tort claims based upon discrimination which could be remedied under the Act." *Fantazzi v. Temple Univ.*, No. 00-cv-4175, 2001 WL 872455, at *2 (E.D. Pa. June 11, 2001) (citing *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 437 (3d Cir. 1986)). The PHRA preempts negligence claims that allege a "failure to train, supervise and investigate." *Swanson v. Nw. Human Servs., Inc.*, No. 05-cv-3054, 2006 WL 3354145, at *6 (E.D. Pa. Nov. 2, 2006), *aff'd*, 276 F. App'x 195 (3d Cir. 2008). Negligent supervision claims arising out of employment discrimination cases in Pennsylvania must be brought under the PHRA. *Randler v. Kountry Kraft Kitchens*, No. 1:11-cv-0474, 2012 WL 6561510, at *14 (M.D. Pa. Dec. 17, 2012). A failure to bring a claim under the PHRA does not enable the claim to be brought as a common law tort cause of action. *Id.* This is because "[i]f a common law action for the same claims were recognized, it would give the claimant an opportunity to circumvent the carefully drafted legislative procedures." *Wolk v. Saks Fifth Ave. Inc.*, 728 F.2d 221, 224 (3d Cir. 1984) (citing *Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 919 (3d Cir. 1982)).

The Court holds that the PHRA preempts Plaintiff's negligence/negligent supervision claim because the claim, in essence, is a hostile work environment claim. In Plaintiff's negligent supervision claim, Plaintiff alleges that: (1) other female employees reported prior harassment from Mr. Lewis to Select; (2) Select failed to take appropriate matters to manage Mr. Lewis's behavior and protect Plaintiff; (3) Select's policies prohibiting sexual harassment were inadequate

because they created "an atmosphere of silence" at Select; and (4) Select failed to monitor the medication room where Mr. Lewis assaulted her. (ECF No. 30 ¶¶ 49–64.) These allegations support the same grievance in Plaintiff's hostile work environment claim. In that claim, Plaintiff asserts that Select discriminated against her because of her sex by failing to take appropriate action to prevent harassment at Select. In her negligence/negligent supervision claim, Plaintiff is bringing a common law tort claim that could be remedied under the PHRA. Because her allegations could be remedied under the PHRA, her claim is preempted. Plaintiff is not allowed to assert this claim in a way that circumvents the PHRA's statutory framework. Accordingly, the PHRA preempts Plaintiff's negligence/negligent supervision claim.[3]

## VII. Conclusion

For the forgoing reasons, the Court grants Defendants' Motion.

An appropriate order follows.

---

[3] Alternatively, even if the PHRA did not preempt Plaintiff's negligence/negligent supervision claim, the Court would nevertheless dismiss the claim. Under Pennsylvania law, to establish a negligent supervision claim, the plaintiff must show that that the employer knew or should have known that an employee would have engaged in the alleged tortious conduct. *Dempsey v. Walso Bureau, Inc.*, 246 A.2d 418, 422 (Pa. 1968). Here, it is undisputed that Select received no complaints regarding Mr. Lewis other than Plaintiff's allegations. (ECF No. 76 ¶ 82.) Accordingly, Plaintiff cannot establish that Select could foresee Mr. Lewis's alleged assault of Plaintiff.

-14-

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DONNA ROADMAN, | ) | Case No. 3:16-cv-246 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| SELECT SPECIALTY HOSPITAL and RONALD LEWIS, | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 5th day of February, 2020, upon consideration of Defendants' Motion for Partial Summary Judgment (ECF No. 75), and for the reasons set forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that said Motion is **GRANTED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE